KELLEY CARROLL MCMAHON vs. WILLIAM J. FINLAYSON
& another.[1]

No. 92-P-1330.

Suffolk. November 9, 1993. - April 25, 1994.

Present: JACOBS, GILLERMAN, & PORADA, JJ.

*Negligence*, Medical malpractice. *Doctor*, Duty to disclose to patient.
*Medical Malpractice*, Consent to medical treatment.

At the trial of a medical malpractice action based on a failure of the de-
fendant physician to obtain the plaintiff's informed consent before sur-
gery, the defendant's motion for judgment notwithstanding the verdict
was correctly denied, where the jury could properly conclude on the
evidence presented that the physician failed to disclose material general
risks of potential damage to organs within the operative field, that dam-
age to one of those organs was the risk that materialized, and that
neither the plaintiff nor a reasonable person in similar circumstances
would have consented to the procedure had she been properly advised.
[373-376]

CIVIL ACTION commenced in the Superior Court Depart-
ment on July 15, 1987.

The case was tried before *John L. Murphy*, J., and a mo-
tion for a new trial was heard by him.

*Charles P. Reidy, III*, for the defendants.

*John R. McGrail*, of Connecticut, for the plaintiff.

JACOBS, J. In this appeal, the defendants question the suffi-
ciency of evidence to support a Superior Court jury's award
of $119,700 on the plaintiff's medical malpractice claim. At
trial, the plaintiff claimed that she suffered thermal sever-
ance of her ureter as a result of a laparoscopic examination
and cauterization procedure (fulguration of endometriosis)

[1]New England OB/GYN Associates, Inc.

performed by the defendant Dr. Finlayson in 1984.[2] After a dismissal, by stipulation, of a negligence claim, the trial proceeded solely on the issue of whether Dr. Finlayson failed to obtain the plaintiff's informed consent by neglecting to apprise her of the material risks of the procedures involved and of available alternatives to those procedures. Dr. Finlayson essentially argues that the defendants' motions for judgment notwithstanding the verdict and for a new trial should have been granted because evidence of the likelihood of thermal damage to the ureter was insufficient, as matter of law, to establish that it should have been disclosed by him. We affirm.

The applicable principles are well established. "[A] physician owes to his patient the duty to disclose in a reasonable manner all significant medical information that the physician possesses or reasonably should possess that is material to an intelligent decision by the patient whether to undergo a proposed procedure." *Harnish* v. *Children's Hosp. Med. Center,* 387 Mass. 152, 155 (1982). *Halley* v. *Birbiglia,* 390 Mass. 540, 548 (1983). "Materiality may be said to be the significance a reasonable person, in what the physician knows or should know is his patient's position, would attach to the disclosed risk or risks in deciding whether to submit or not to submit to surgery or treatment." *Harnish* v. *Children's Hosp. Med. Center, supra* at 156, quoting from *Wilkinson* v. *Vesey,* 110 R.I. 606, 627 (1972). "The materiality of information about a potential injury is a function not only of the severity of the injury, but also of the likelihood that it will occur." *Precourt* v. *Frederick,* 395 Mass. 689, 694 (1985). "At trial, the plaintiff must also show that had the proper information been provided neither [s]he nor a reasonable person in similar circumstances would have undergone the procedure." *Harnish* v. *Children's Hosp. Med. Center, supra*

---

[2]Dr. Finlayson testified that the laparoscopic procedure involves the insertion of a long, thin telescopic tube through an incision usually made through the lower edge of the navel. If cauterization is carried out, a second, smaller incision is required in the pubic area through which a probe, connected to an electrical current is inserted. See generally Sloane-Dorland Annotated Medical-Legal Dictionary 302, 404 (1987).

at 158. A plaintiff must also prove that "[a]n unrevealed risk that should have been made known . . . materialize[d]." *Id.* at 157-158, quoting from *Canterbury* v. *Spence*, 464 F.2d 772, 790 (D.C. Cir.), cert. denied, 409 U.S. 1064 (1972).

It was within the jury's province to accept the plaintiff's testimony that Dr. Finlayson did not advise her of the general risks and alternatives of the laparoscopic procedure recommended by him or of the cauterization which he indicated would be performed if his laparoscopic examination found ovarian cysts or endometriosis.[3] The jury also could have concluded, as it did in response to special verdict questions,[4] that neither the plaintiff nor a reasonable person in similar circumstances would have consented to the performance of the laparoscopic procedure had she been so advised.[5]

The defendants argue that the plaintiff's case fails on the issue of materiality in that the only evidence of the likelihood of thermal injury to the ureter was contained in the testimony of an expert called by the defendants who stated that the risk was "[i]nfinitesimally small." Relying on the well-founded principle that a "physician is not required to inform a patient of remote risks," *Precourt* v. *Frederick*, 395 Mass. at 697, the defendants maintain that the case should not have been submitted to the jury. This argument would prevail were it not for Dr. Finlayson's testimony.

---

[3]Dr. Finlayson, in his testimony, described endometriosis as implants of the endometrium, the tissue that lines the interior of the uterus, which may also appear on the ovaries, fallopian tubes, the back of the uterus, or on the bowel, bladder, or ureter. See Sloane-Dorland Annotated Medical-Legal Dictionary 252 (1987).

[4]The jury responded in the plaintiff's favor to special verdict questions covering the elements of the informed consent doctrine. No issue is made on appeal of those questions being presented to the jury except as relates to the issue of materiality.

[5]The plaintiff signed a preprinted hospital form, not presented in our record, requesting the procedure. We are informed that the form did not provide any information about risks or complications. Dr. Finlayson testified he would not rely entirely on the form to inform patients about the risks and complications of a particular procedure and agreed that the use of a general consent form would not be in keeping with his duty to inform a patient of the risks of the procedure.

Called to the stand by the plaintiff, Dr. Finlayson stated that "the patient has . . . the right to know what risks there are," and he acknowledged that "major complications of damage to organs . . . within the operative field [should] be disclosed" and that disclosure of such risks is encompassed within the applicable standard of duty. He also identified the ureter as one of the organs within the operative field, along with the uterus, ovaries, fallopian tubes, bowel, and bladder, and specifically acknowledged that damage to the ureter is a recognized risk of the procedure performed. Later, while testifying as part of the defendants' case,[6] he assessed the "general" risk of complication with respect to the body parts or organs within the operative field as "between three and four percent."

The evidence elicited from Dr. Finlayson must be evaluated in the context of the plaintiff's testimony that he variously described the procedure to her as a "simple operation," an "easy operation," and "[a] piece of cake." In the course of his testimony, Dr. Finlayson described the procedure as "ambulatory" and confirmed that he might have stated that it was not very complicated nor a very risky procedure. Given that context, the issue is not whether Dr. Finlayson should have disclosed the remote and specific risk of thermal damage to the ureter but whether he was obliged to disclose that there were general risks of damage to organs within the operative field, including possible damage to the ureter. No contention is made that the risk of damage to those organs was known by the plaintiff to be inherent in a "simple operation." See *Harnish* v. *Children's Hosp. Med. Center*, 387 Mass. at 156; *Wilkinson* v. *Vesey*, 110 R.I. at 627 ("Obviously there

---

[6]By introducing evidence after the denial of their motion for a directed verdict at the close of the plaintiff's case, the defendants have waived their right to have the issue of sufficiency weighed solely on the basis of the plaintiff's evidence. *Martin* v. *Hall*, 369 Mass. 882, 883-884 (1976). Given the renewal of the motion for a directed verdict at the close of the defendants' case, our review of the evidence encompasses that submitted in the course of the defendants' case. "It not infrequently happens that the defendant himself, by his own evidence, supplies the missing link. . . ." *Id.* at 885, quoting from *Bogk* v. *Gassert*, 149 U.S. 17, 23 (1893). See also *Alston* v. *Bowins*, 733 F.2d 161, 163 (D.C. Cir. 1984).

is no need to disclose risks that are likely to be known by the average patient or that are in fact known to the patient . . ."). Relying on Dr. Finlayson's testimony, the jury properly could have found an obligation to reveal such general risks.

Relying on *Precourt* v. *Frederick*, 395 Mass. at 697, the defendants maintain that the plaintiff failed to present medical evidence of the likelihood or probability of thermal damage to the ureter. That argument defines the risk that materialized too narrowly. The risk that should have been disclosed involved potential damage to organs within the operative field, and damage to one of those organs is the risk that materialized. To the extent that the *Precourt* decision requires an expert to quantify the likelihood factor in order to place the issue of materiality before a fact finder, see *Kissinger* v. *Lofgren*, 836 F.2d 678, 681 (1st Cir. 1988), Dr. Finlayson's testimony of a three to four percent risk of complication to organs within the operative field meets that requirement.

As testified to by Dr. Finlayson, whether any specific organ would be at risk in the procedure performed would depend upon unpredictable factors such as the location and extent of endometriosis. In these circumstances, isolating and identifying the likelihood and severity of specific risks to any one organ alone would not provide information to which a person in the plaintiff's circumstances reasonably would attach significance when deciding whether to submit to the proposed procedure, but rather would unrealistically and intolerably burden the physician and encumber discourse with what might be, to the patient, an incomprehensible and daunting catalogue of complications. Conversely, given the proclaimed simplicity of the laparoscopy, a general description of the risks associated with the procedure not only would be far more material to the patient's decision but also would be more likely to stimulate an articulation of concerns and

questions by the patient and responsive amplification and explication of the general disclosure by the physician.

*Judgment affirmed.*