DONNA FEELEY, administratrix,[1] vs. STEPHEN BAER & others.[2]

No. 95-P-1633.

Middlesex. May 28, 1996. - September 3, 1996.

Present: DREBEN, LAURENCE, & FLANNERY, JJ.

Further appellate review granted, 423 Mass. 1111 (1996).

*Practice, Civil,* Directed verdict. *Negligence,* Medical malpractice. *Medical Malpractice,* Consent to medical treatment. *Doctor,* Duty to disclose to patient.

At the trial of a medical malpractice action arising from the death of a child five days after his birth from an infection contracted in utero, the judge erred in directing verdicts for defendant doctors on the issue of informed consent, where the plaintiff's evidence was sufficient to present a jury question as to whether the defendants reasonably should have recognized that the undisclosed risk of deliberately foregoing an accepted procedure and choosing an alternative course of treatment, without discussing the matter with the child's mother, was material to her decision as to which of the courses to follow [242-244]; there was no error in the judge's refusing to allow the plaintiff, apart from the informed consent doctrine, to claim and present evidence that failure to disclose the material risks of the chosen course of treatment was simple negligence and did not comply with the standard of the average practitioner [244].

CIVIL ACTION commenced in the Superior Court Department on September 26, 1989.

The case was tried before *Julian T. Houston,* J.

*Philip J. Crowe, Jr.,* for the plaintiff.

*Raymond J. Kenney, Jr.,* for Stephen Baer.

*Frank E. Reardon* for Richard McNeer.

DREBEN, J. Eric Feeley died on October 19, 1987, five days

---

[1]Of the estate of Eric Feeley.

[2]Richard McNeer and Harvard Community Health Plan, Inc. The plaintiff makes no argument concerning Harvard Community Health Plan. Therefore, any claim against that entity is waived. See Mass.R.A.P. 16(a)(4), 367 Mass. 921 (1975).

after his birth. When his mother brought this action against the physicians responsible for his delivery, the jury found in favor of the defendants. In this appeal from that judgment, the plaintiff claims the judge erred in (1) directing verdicts for the defendants on the issue of informed consent and (2) refusing to allow the plaintiff to proceed on a theory that the defendants' failure to disclose the risks of treatment constituted negligence. We hold that there was sufficient evidence for the issue of informed consent to present a jury question but reject the plaintiff's theory of negligent failure to disclose.

In reviewing the trial court's direction of the verdicts on the issue of informed consent, we must determine whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff" (citation omitted). *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972). Accordingly, we look at the evidence, construed most favorably to the plaintiff. *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978).

1. *The evidence at trial.* In 1987, Donna Feeley (Feeley), Eric's mother, became pregnant for the fourth time and experienced a normal course of pregnancy without any prenatal problems. On the morning of Monday, October 12, 1987, two days after her due date, Feeley's water broke, and she was admitted to Beth Israel Hospital at noon. She was not in labor when she arrived at the hospital. Her treating physicians, the defendants Dr. Richard McNeer and Dr. Stephen Baer,[3] without discussing the matter with Feeley, chose a course of treatment known as "expectant management." This approach is based upon the theory that once the membranes have ruptured, the pregnancy should proceed naturally to spontaneous labor without surgical intervention or medication to induce labor, provided that there is no indication of other reasons to intervene. Feeley went into labor on Wednesday evening and gave birth shortly thereafter.

The experts for the plaintiff and for the defendants both acknowledged at trial that once a woman's membranes have ruptured, there is a need to be alert for evidence of infection.

---

[3]Dr. McNeer was responsible for her treatment from the time of her admission until 8 A.M. on Tuesday when the defendant Dr. Baer assumed responsibility for her care.

Indeed, from the time of her admission, Feeley's order sheet required that she be monitored every four hours. What was disputed was whether the expectant management approach created a significantly greater hazard than the risks posed by induction of labor.

Dr. David Hollander, the plaintiff's expert, testified that labor should have been induced when Feeley first came into the hospital, that Eric contracted his infection in utero, and that had he been delivered prior to Tuesday evening, he would not have contracted the infection.

In explaining the risks of the two possible courses of treatment — inducing labor or waiting for the mother to give birth naturally — Dr. Hollander indicated that, when dealing with a patient who has had three prior deliveries of relatively short labor, the risk of infection by not inducing labor "greatly outweighs" the possibility of a failed induction (that is, a long labor and ultimately a Caesarean section). "So clearly, the risk to the mother is very small with induction of labor, and clearly the risk of waiting is one of infection." For someone who has had prior fairly easy vaginal deliveries the "risk of infection either for the mother and certainly for baby far, far outweighs the risk of doing nothing and just letting the woman sit there. And it's a risk you need to discuss." On cross-examination, in discussing *infection of amniotic fluid* (chorioamnionitis), Dr. Hollander agreed with a text which stated that chorioamnionitis may leave the fetus uninfected in up to ninety-five percent of cases.

The defendants' expert, Dr. Jeffrey Riley, although disagreeing that the risk of infection was greater with the "expectant management" approach, acknowledged that a text dated 1987, authored in part by the chief of obstetrics at the Beth Israel Hospital, stated, "If conditions for induction are optimal at or near term, the hazard of infection from delay probably outweighs that of induction." Dr. Riley recognized that a publication of the American College of Obstetricians and Gynecologists noted: "For patients who are 34 weeks gestation or more with rupture of the membranes, the pregnancy should be terminated within 24 hours. If delivery is not accomplished within 24 hours, serious consideration should be given to delivery by Caesarean section." Dr. Riley also agreed that a "patient who is in the hospital with a condition that presents increased risks is entitled to know about her condition and the risks associated with it."

As noted earlier, neither Dr. McNeer nor Dr. Baer ever told Feeley about the risks of the expectant management approach or the option of induced labor.

The trial judge, relying on *Precourt* v. *Frederick*, 395 Mass. 689 (1985), was first of opinion that "the plaintiff has failed to establish the likelihood that the risks associated with a ruptured fetal membrane would pose a danger of infection by way of the streptococcus pneumonia virus." Eric had died of this rare virus. After plaintiff's counsel pointed out that his theory was not that the doctors should have warned against a specific type of organism, or the manner of transmission or the type of death, but rather should have warned against infection, see *McMahon* v. *Finlayson*, 36 Mass. App. Ct. 371, 375 (1994), the judge responded that neither the risk of infection nor the specific risk of infection by streptococcus pneumonia bacterium had been established. On this basis, he removed the issue of informed consent from the jury.

2. *Informed consent.* In *Harnish* v. *Children's Hosp. Med. Center,* 387 Mass. 152, 154 (1982), the Supreme Judicial Court, quoting from *Wilkinson* v. *Vesey,* 110 R.I. 606, 624 (1972), recognized the right of every competent adult "to forego treatment, or even cure, if it entails what for him are intolerable consequences or risks however unwise his sense of values may be in the eyes of the medical profession." That right "requires knowledge of the available options and the risks attendant on each." *Ibid.* Thus, a physician must disclose in a reasonable manner "all significant medical information that the physician possesses or reasonably should possess that is material to an intelligent decision by the patient whether to undergo a proposed procedure." *Id.* at 155. The duty to disclose also exists, contrary to defendant Baer's contention, where there is no invasive procedure or medication, but, as here, a deliberate decision on the part of the doctors to forego an accepted procedure.[4]

"The information a physician reasonably should possess is that information possessed by the average qualified physician or, in the case of a specialty, by the average qualified physician practicing that specialty." *Ibid.* While what the physician should know involves professional expertise, what he or

---

[4]In *Harnish*, at 156, the court specifically noted that appropriate information may include "the likely result of no treatment, and the available alternatives, including their risks and benefits."

she must share with the patient depends upon what informa-
tion the physician should recognize is material to the
plaintiff's decision. In determining what is material, the
Supreme Judicial Court again quoted from *Wilkinson* v. *Ve-
sey, supra* at 627: "Materiality may be said to be the signifi-
cance a reasonable person, in what the physician knows or
should know is his patient's position, would attach to the
disclosed risk or risks in deciding whether to submit or not to
submit to surgery or treatment." *Harnish,* 387 Mass. at 156.

In *Precourt* v. *Frederick,* 395 Mass. at 694, the court ampli-
fied its discussion of materiality and explained that material-
ity is a "function not only of the severity of the injury, but
also of the likelihood that it will occur. Regardless of the se-
verity of a potential injury, if the probability that the injury
will occur is so small as to be practically nonexistent, then
the possibility of that injury occurring cannot be considered a
material factor . . . ." In *Precourt,* a majority of the court
held that despite evidence that the plaintiff's dose of Pred-
nisone was "high," that the course of treatment was "long,"
and that the probability of aseptic necrosis increases with the
exposure to Prednisone, the evidence was insufficient to
permit the inference that the treating physician reasonably
should have recognized that the undisclosed risk was material
to the patient's decision. *Id.* at 696. "[T]here was no evidence
of the likelihood that a person would develop aseptic necrosis
after taking Prednisone or that [the doctor] knew or should
have known that the *likelihood* was other than negligible"
(emphasis supplied). *Ibid.* The court pointed out that "high"
is a relative word, and to say the risk was high "could mean
one in ten, but it could just as well mean one in a million."
*Ibid.*

Although Dr. Hollander characterized the risk of infection
as "big," a term similar to "high," the *likelihood* of risk was
amply supported by the evidence. Every doctor involved knew
there was a risk of infection in following the course that was
taken; indeed, from the moment of admission Feeley was
monitored for infection, and both Dr. Hollander's testimony
and the medical treatises shown to Dr. Riley at trial
recognized that risk. Based on the evidence, a jury could find
that the average qualified obstetrician would know that more
than a short wait, for conditions such as Feeley's, posed more
than a negligible risk of infection. That the defendants

considered the expectant management approach superior, is irrelevant. Physicians may not remain silent simply because disclosure may prompt the patient to forego the method the physicians think best. *Harnish* v. *Children's Hosp. Med. Center*, 387 Mass. at 157. While the likelihood of the specific infection was not shown to be more than negligible, the evidence of the risk of infection was stark. A general description of the risks associated with the two possible courses of action was required. *McMahon* v. *Finlayson*, 36 Mass. App. Ct. at 375.

It takes no discussion to recognize that an expectant mother would consider the risk of infection to her unborn child material in deciding which of the courses to follow.[5] In this connection, the judge erred in not allowing Feeley to testify as to what she would have done had the defendants disclosed the risks and alternatives. Under *Harnish*, Feeley "must . . . show that had the proper information been provided neither [s]he nor a reasonable person in similar circumstances would have" followed the expectant management procedure. 387 Mass. at 158.

2. *Negligence in failing to disclose.* Feeley also argues that the judge erred in not allowing her, apart from the informed consent doctrine, to claim and present evidence that failure to disclose the material risks of the expectant management approach was simple negligence and did not comply with the standard of the average practitioner. See *Brune* v. *Belinkoff*, 354 Mass. 102 (1968). *Harnish* forecloses that argument: "Many jurisdictions have adopted the rule that a physician must disclose to his patient only such information as is customarily disclosed by physicians in similar circumstances. We think that the better rule is the one we adopt today. The customary practice standard overlooks the purpose of requiring disclosure, which is protection of the patient's right to decide for himself." 387 Mass. at 156-157. Compare *Canterbury* v. *Spence*, 464 F.2d 772, 783 (D.C. Cir.), cert. denied, 409 U.S. 1064 (1972).

---

[5]Moreover, a leading opinion has posited: "Whenever nondisclosure of particular risk information is open to debate by reasonable-minded [persons], the issue is for the finder of the facts." *Canterbury* v. *Spence*, 464 F.2d 772, 788 (D.C. Cir.), cert. denied, 409 U.S. 1064 (1972).

The orders directing verdicts for the defendants McNeer[6] and Baer on the issue of informed consent and the judgment entered thereon are reversed. The matter is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[6]Although there was evidence from the vital signs of both the mother and the baby that the risks of the expectant management approach increased during Dr. Baer's time of responsibility, the evidence recounted in the text was sufficient to require that Dr. McNeer, too, should have informed Feeley of the risks and told her of alternatives.