ARGUED AND DETERMINED

IN THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS.

---

MARY DONAHUE, administratrix, *vs.* SIMON VORENBERG.
MARY M. MORRISSEY, administratrix, *vs.* SAME.

Suffolk.   November 24, 1916. — May 24, 1917.

Present: RUGG, C. J., LORING, DE COURCY, CROSBY, & CARROLL, JJ.

*Agency*, Existence of relation, Scope of employment.

In an action by an administrator against the owner of a motor car, for causing
the death of the plaintiff's intestate by running over him in the night time by
reason of the intoxication and negligence of a chauffeur in the employ of the
defendant who was driving the car, there was evidence on which it could be found
that the chauffeur had been instructed by the defendant to take a helper with
him and go to a garage of the defendant in a town about fifteen miles away to
overhaul a car there that the defendant recently had bought, that the chauffeur
at nine o'clock in the evening, on failing to find a person who had agreed to meet
him at that hour to go with him as helper, determined to abandon his duties as
chauffeur and thereupon drove with certain persons as guests to a hotel where
they took drinks of whiskey, that then with two of his guests he stopped at
the garage where the car was kept and received a message from the man he
had engaged as helper that he would meet him at a certain other hotel at mid-
night, that the chauffeur, with his two guests and an assistant chauffeur in
the employ of the defendant, then drove to the hotel named by the helper and
waited there until a quarter past twelve o'clock, the chauffeur and his two
guests having taken several more drinks while waiting, that the helper failed
to arrive, and that then the chauffeur, who was intoxicated, started for the
defendant's garage in the town to which he had been ordered to go, intending

to leave first one of his two guests and then the other at the places where they lived each in a different city on the direct route to the town where the garage was, and that shortly after he started he ran over and killed the plaintiff's intestate. *Held*, that there was evidence that when the chauffeur ran over the plaintiff's intestate he was engaged in the defendant's business, and that the presiding judge was right in refusing to order a verdict for the defendant.

Two ACTIONS OF TORT against the same defendant, the first by the administratrix of the estate of Thomas Donahue and the second by the administratrix of the estate of John J. Connolly, each for causing the death of the plaintiffs' intestate by running over him with a motor car of the defendant driven negligently by the defendant's servant, one Malloy, on Boylston Street in Boston near the public library on April 27, 1912. Writs dated respectively July 8, 1912, and January 5, 1914.

In the Superior Court the cases were tried together before *Dubuque,* J. The facts which could have been found upon the evidence are stated in the opinion. The seventh and the eleventh rulings requested by the defendant, which are mentioned in the opinion, were as follows:

"7. If, at the moment of striking the plaintiff's intestate, Malloy was driving the automobile for the purpose of taking Perkins or the woman then in the automobile to their homes, he was acting outside of the scope of his employment and the verdict must be for the defendant."

"11. If, at the time of the accident Malloy was driving the automobile with the immediate purpose of delivering Perkins and the woman at their homes, or anywhere else, he was not acting for the defendant, and for his acts or omissions the defendant cannot be held liable; and it makes no difference whether that was his sole purpose, or whether he also intended to go on to Swampscott after he had set down Perkins and the woman."

The judge refused to make either of these rulings. He gave the instructions which are described and quoted in the opinion. A part of his charge was as follows:

"It is contended by the defendant that the whole thing was a joy ride, from the moment that Malloy found that he couldn't get Smith, when he waited for him around nine o'clock; and that after that time he waited around and took out those two women who were with him at one time, and one of them went off, as has been explained in the testimony, and subsequently

one of them remained to go in the automobile with him, together with Perkins and Kelly; and it is claimed by the defendant that from the time that he found that he couldn't get Smith he resolved upon a joy ride of his own, upon a frolic of his own, upon business and enjoyment of his own, and that he was not then in the employment of his master, acting under instructions. If you find that he decided at any time before the accident that he would enjoy himself, never mind about the trip to Swampscott, that he was going to enjoy himself, and simply going to take this woman to a street in Cambridge, and take the other man Perkins over to Somerville, as I remember it, and simply for that purpose, and didn't intend to go to Swampscott, and these people were not on the way to Swampscott, then of course the plaintiffs are not entitled to recover; but if at the time of the accident, no matter what occurred before, if at the time of the accident his purpose and intention was to carry out the instructions of his employer; if such instructions had not been changed or altered in the meantime at any time after the trip to Swampscott was decided by the employer; if, at the time of the accident he was on his way to Swampscott, it makes no difference whether at that time he also was intending to enjoy himself, if while in having the company of this woman in the car, and also the company of these two other men in the rear seat of the car, it would make no difference if at that time these other people happened to be in the car and it would make no difference if he intended to leave one in Cambridge and the other one in Somerville, if he was in the substantially direct route to his destination, Swampscott, at the time of the accident."

The jury returned a verdict for the plaintiff in each of the cases in the sum of $10,000; and the defendant alleged exceptions.

The cases were submitted on briefs.

*H. C. Sawyer, E. C. Stone & J. M. Morrison,* for the defendant.

*D. H. Coakley & C. J. Muldoon, Jr.,* for the plaintiffs.

LORING, J. On the plaintiffs' evidence the jury were warranted in finding the facts of these two cases to be as follows: The defendant instructed his chauffeur (Malloy by name) to hire a man as a helper and go with him to Swampscott (where the defendant had a garage) and to overhaul a car which he (the defendant) had recently bought. Pursuant to these instructions Malloy called

up one Smith on the telephone and hired him to go to Swampscott. He arranged to have Smith meet him "at the corner of Massachusetts Avenue and Washington Street, the Northampton Street station of the Boston Elevated" Railway Company at nine o'clock in the evening of the same day. At that time Malloy went with the car to the place appointed taking with him a friend by the name of Perkins. Smith did not keep his appointment. After waiting some time Malloy determined to abandon his duties as chauffeur for the defendant. With Perkins he drove to Huntington Avenue and invited two women whom they met there to go with them. Malloy then drove to a hotel in Brighton where they all had two or three drinks of whiskey. Malloy had taken a drink of whiskey earlier in the evening on his way to the Northampton Street station. One of the women left the others at the Brighton Hotel. Then Malloy with Perkins and the other woman (McCarthy by name) went to the Charlesgate Garage in Boston. The Charlesgate Garage is situated on the corner of Massachusetts Avenue and Newbury Street and is the garage at which the defendant kept his car. At the Charlesgate Garage Malloy was told that Smith had sent word that he had been delayed but that he would meet him (Malloy) at the Hotel Hayward at midnight. While at the Charlesgate Garage Malloy told one Kelly who was in the employ of the defendant as a temporary chauffeur that he wanted him to go with him to the Hotel Hayward. The Hotel Hayward is in Hayward Place near the junction of Washington and Boylston Streets. Thereupon Malloy with Perkins, Kelly and the McCarthy woman went to the Hotel Hayward. They waited there for Smith until quarter past twelve. While waiting Malloy, Perkins and the McCarthy woman had several more drinks of whiskey. Kelly however drank water and only water. At quarter past twelve Perkins was so drunk he had to be helped into the car and Malloy was intoxicated. Malloy then started for the garage in Swampscott intending to leave the McCarthy woman at a place in Cambridge which was on the direct route to Swampscott and Perkins at a place in Somerville which was also on that route. On leaving the Hotel Hayward Malloy drove up Boylston Street to Exeter, through Exeter to Commonwealth Avenue thence to Massachusetts Avenue and across the Harvard Bridge. In driving up Boylston

Street he ran over and killed two men. It is for the death of these two men that these actions are brought. The details of the accident need not be stated because it is admitted that there was evidence that the deceased and both of them were in the exercise of due care and that the accident was caused by Malloy's negligence. Two questions only are raised by the exceptions, namely: (1) whether there was evidence that at the time that he ran over the men Malloy was "engaged in his [the defendant's] business" and (2) whether the judge was wrong in the instructions under which he left that question of fact to the jury.

The defendant's testimony warranted the jury in finding that when Smith failed to keep his appointment with Malloy at the Northampton Street station at nine o'clock in the evening, he (Malloy) abandoned his duties as the defendant's chauffeur and never undertook to resume them.

1. The first exception argued by the defendant is that taken by him to the refusal of the presiding judge to direct a verdict for the defendant. This exception is based on the ground that even if the jury took the view of the facts most favorable to the plaintiffs, they were not warranted in finding that at the time Malloy ran over the two men on Boylston Street he was "engaged in his [the defendant's] business."

The argument in support of this proposition is that the primary object upon which Malloy was bent at the time of the accident was to take Perkins and the McCarthy woman to their homes in Cambridge and Somerville and that, until he had done that, he as matter of law had not resumed his duties as a servant of the defendant. If the jury had found that Malloy did not intend to resume his duties as the defendant's chauffeur until he had taken Perkins and the McCarthy woman home the defendant's contention would have been correct. But there was explicit evidence that Malloy went to the Hayward to meet Smith and the jury were warranted in finding that when he left the Hayward he left to go to Swampscott, intending incidentally to leave the McCarthy woman and Perkins where they wished to be left, at two different places on the direct route to Swampscott. Malloy's intention in this respect is decisive. *Ross* v. *John Hancock Mutual Life Ins. Co.* 222 Mass. 560. If it was Malloy's intention on leaving the Hotel Hayward to go to Swampscott pursuant to instructions

which had been given him by the defendant, the fact that he intended incidentally to gratify a private desire of his own by leaving the McCarthy woman and Perkins at two different places on the route is not material. *McKeever* v. *Ratcliffe*, 218 Mass. 17. *Fitzgerald* v. *Boston & Northern Street Railway*, 214 Mass. 435. It was a question of fact for the jury whether it was the intention of Malloy on leaving the Hotel Hayward to go to Swampscott pursuant to the instructions which he had received from the defendant. There being evidence on which the jury could have found that that was Malloy's intention, the judge could not have directed the jury to render a verdict in favor of the defendant.

2. The next exception argued by the defendant is the exception taken to the refusal to give the seventh and eleventh requests for rulings. What has been said disposes of these exceptions. In support of this exception the defendant has argued that after Malloy abandoned his duties as a chauffeur for the defendant early in the evening he could not resume his duties as the defendant's employee without an implied assent on the part of the employer to the resumption of those duties. And since Malloy had become intoxicated between the time when he abandoned his duties and the time when he undertook to resume them (if the jury found as they must have found that he undertook to and did resume them) he did not in legal contemplation resume his duties and become "engaged in his [the defendant's] business." We cannot accede to this contention.

3. The last exception is the exception taken to a part of the charge. The defendant complains that in his charge the presiding judge instructed the jury that, if Malloy had resumed the physical route which led to Swampscott, he resumed his duties as chauffeur for the defendant. And he urges that in case that be not true if each and every part of this part of the charge is taken into consideration yet, taking what the judge said as a whole, it might reasonably have been understood by the jury to mean that.

In support of this contention he has taken sentences which standing alone and without regard to the rest of the portion of the charge excepted to might be open to that objection. But taking the portion of the charge excepted to as a whole it is not open to it. Three times during the portion of the charge excepted to (and

the portion is not a long one) the judge told the jury that they must find that at the time of the accident Malloy was going to Swampscott pursuant to instructions which he had received from the defendant. In one place he said: "If at the time of the accident Malloy was engaged in going to the destination under the instruction and orders of his employer, which had not been revoked or altered or changed." Again immediately after that the judge said: "if at that time he was engaged in going to Swampscott under instructions to do that, it would make no difference whether he had one woman or two, or one woman and two men in the automobile at the time." And again: "if at the time of the accident his purpose and intention was to carry out the instructions of the employer," etc.

There is nothing in the cases relied upon by the defendant other than the three mentioned above which require special notice. The principles of law on which the decision rests are settled in this Commonwealth. It is not necessary to notice cases from other jurisdictions relied upon by the defendant.

*Exceptions overruled.*