Melvin H. Osterman, J.
This is a claim for damages by reason of the negligence of the State in the operation and control of an aircraft on loan or assigned to the State and piloted by a member of the aviation section of the New York National Guard.
On February 24,1958, the claimant, who held a Naval Reserve pilot’s rating, accompanied his friend, Lieutenant Peter Nast, on a flight from Zahn’s Airport, Amityville, to Atwood Airport in Northampton, Massachusetts. On the return flight from Northampton to New York, Lieutenant Nast, who was piloting the airplane struck some power lines above the Connecticut River resulting in a crash which killed Lieutenant Nast and seriously injured the claimant.
Since the accident occurred in Massachusetts and since the State of New York has consented to have its tort liability determined ‘ ‘ in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations ”, we must apply the substantive law of the State of Massachusetts to the question of the defendant’s liability in this action. (Poplar v. Bourjois, Inc., 298 N. Y. 62; Fitzpatrick v. International Ry. Co., 252 N. Y. 127.)
The claimant contends that Lieutenant Nast was negligent in the operation of this aircraft; that the claimant was free from contributory negligence and that Lieutenant Nast was acting within the scope of his authority during the fatal flight thereby rendering the State liable (Court of Claims Act, § 8). The State alleges, however, that this flight was purely one of personal pleasure and convenience for both Nast and Ernst; that Nast’s activities did not come within the purview of section 8-a of the Court of Claims Act, and that, in any event, Nast was not negligent in the operation of the aircraft.
The crux of the State’s jurisdictional position is that Nast and Ernst were engaged in a personal visit to a friend of Lieutenant Nast in Northampton and that the aircraft was used solely as a means to accomplish this personal end rather than it being connected with Nast’s duties as a member of our National Guard. The record discloses that Nast and Ernst had been close personal friends for some time prior to the flight; that Nast wanted to visit a young lady who was attending college in Northampton and that Nast asked Ernst to accompany him on a training-flight during which they could stop off and visit this friend. On the date of the accident, Nast and Ernst went to the National Guard section of Zahn’s Airport and received a flight clearance *266 for a 100-mile radius flight. Nast signed the necessary forms to have the aircraft released to him and Ernst signed the necessary forms which permitted him to go on this flight as a passenger, all in accordance with military regulations. The two men flew to Westchester Airport where Nast went to the operational officer and filed a flight plan indicating his intention to go to Northampton, Massachusetts. Apparently the second flight was not permitted under the original clearance secured by Nast in Amityville. However, there is no indication in the record that the claimant knew of any violation of military regulations and furthermore, the testimony of the operations officer in charge of both Zahn’s and Westchester Airports indicated that flights outside of the originally cleared area were common and were not the subject of any disciplinary action. This officer also testified that had Nast requested a different type of aircraft, he would have been authorized to make the flight to Northampton and that Nast was qualified under military rating to make such a flight.
There is no question that if this flight were intended solely as a personal venture, the State would not be liable. However, if during the flight, Lieutenant Nast was performing his military functions and was concurrently serving some minor personal purpose, the relationship of master and servant would still exist and render the defendant liable (Donahue v. Vorenberg, 227 Mass. 1; Shearman and Redfield, Law of Negligence, §§ 155,156). The fact that the servant had with him a companion whose presence was not connected with the business of the master does not negate a master and servant relationship (Cummings v. Republic Truck Co., 241 Mass. 292), particularly where the claimant’s presence was authorized by military regulations.
In the ease at bar, the business of the master is to have the State militarily prepared through the training of members of its militia. As such a member, Lieutenant Nast was required to “ log ” a required number of flight hours per year. In order to maintain his pilot’s status by accruing flying time, all that Lieutenant Nast was required to do was to pilot his aircraft without any specified tactical maneuvers and without any definite purpose attached to any one flight. While maneuvers and tactics were prescribed in other types of training flights, on this flight Lieutenant Nast was required to consume hours in the air only. It would be unreasonable to expect the pilot to continually stay aloft without landing for refueling, for meals or for other necessary purposes. If some personal purpose was accomplished during a stopover in this flight, the general purpose of the master was still being served. That the pilot prearranged his schedule to convenience himself with respect to a personal visit does not *267 render his trip an abandonment of the master’s purpose where the master’s business is so free from restrictions and directions. Furthermore, a technical disobedience of the regulations governing the flight cannot be said in this case to be a total deviation from the master’s business when such conduct is admittedly frequent, not the subject of discipline, and when the master’s general purpose was continued to be served during the “ forbidden ” flight.
We therefore find that Lieutenant Nast was acting within the scope of his duties as a member of the organized militia during the entire flight (Court of Claims Act, § 8-a).
With respect to the negligence involved, the claimant, who impressed this court with his credibility and clarity, testified that on the return trip, Lieutenant Nast was flying quite low following the bed of the Connecticut River; that at about 50 feet in altitude, the claimant observed power lines directly in the path of the aircraft; that the claimant tapped Nast on the shoulder to warn him of the danger; that Nast acknowledged this warning and that he tried to take corrective action, but was too late in doing so, resulting in the plane striking the wires and crashing into the river. The State’s major argument against a finding of negligence seems to be that Nast was permitted to fly at this altitude by virtue of certain military regulations. We do not agree with such argument. While the pilot may have been permitted to fly at such altitude, obviously, he was not permitted to fly at such altitude and strike power lines. We find that the pilot was negligent in that he failed to observe minimum safety requirements by flying at such an altitude without due regard for the physical dangers to be encountered and further that after being warned of such dangers, he failed to remove the aircraft from a path of known danger. We further find that the claimant was free from any contributory negligence.
With respect to the injuries sustained, the record discloses that the claimant was hospitalized at Westover Air Force Base Hospital from February 24,1958, to February 28, 1958, where a diagnosis was made of a fracture of the first metacarpus, a fracture of the right maxilla and right zygoma, acute sprain of the left ankle and severe and multiple lacerations, contusions and abrasions of the body. On February 28,1958, he was transferred by ambulance to the Massachusetts General Hospital where he remained until March 6,1958, and where surgery was performed involving his teeth and jaw, which was subsequently wired. He walked on crutches for approximately three weeks, had a cast on his hand for approximately one month and had several teeth extracted, filled and capped as a result of the injuries sustained. *268 However, the claimant did resume part-time employment on March 10, 1958, has now resumed full-time employment and has received a physical rating of excellent enabling him to now fly jet aircraft. The court also finds that there was no loss of earnings, that the fair and reasonable value of the hospital bill at Massachusetts General Hospital was $578.25 and that the fair and reasonable value of dental services rendered to claimant was $450.
The court awards the claimant the sum of $11,028.25 for all pain and suffering and any permanent injury resulting from this accident which includes therein an amount for the fair and reasonable value of medical bills paid by the claimant.
The claimant shall have judgment against the defendant in the aforesaid amount.
All motions made by the defendant upon which the court reserved decision during trial are hereby denied.