JAMES A. BURROUGHS & another,[1] administrators,[2] *vs.*
COMMONWEALTH.

Norfolk. October 7, 1996. - December 9, 1996.

Present: WILKINS, C.J., ABRAMS, O'CONNOR, & FRIED, JJ.

*Agency,* Scope of authority or employment. *Massachusetts Tort Claims Act.*
  *Commonwealth,* Liability for tort. *Negligence,* Serving alcoholic liquors
  to guest, Social host. *Alcoholic Liquors,* Liability of host, Motor vehicle.

In a wrongful death action brought against the Commonwealth under
G. L. c. 258, the Massachusetts Tort Claims Act, the evidence was
insufficient to find the Commonwealth liable either on a theory of vicari-
ous liability for the actions of public employees within the scope of their
employment or under a "social host" theory for control of the serving of
liquor in a National Guard armory. [877-879]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 22, 1988.

The case was tried before *Thomas E. Connolly,* J., and a
motion for a new trial was heard by him.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Rosemary S. Gale,* Assistant Attorney General, for the
Commonwealth.

*John B. Connarton, Jr. (Maria Elisa Ciampa* with him) for
the plaintiffs.

O'CONNOR, J. The Commonwealth appeals from the denial
of its motion for judgment notwithstanding the verdict or, in
the alternative, for a new trial. We transferred the case from
the Appeals Court to this court on our own initiative. We re-
verse the judgment entered in the Superior Court and order
that judgment be entered for the Commonwealth.

The plaintiffs brought this action against the Com-
monwealth under G. L. c. 258 (1994 ed.), the Massachusetts

---

[1]Susan M. Hynes.

[2]Of the Estate of Ruth T. Burroughs.

Tort Claims Act, for the wrongful death of their decedent, Ruth T. Burroughs. The decedent was fatally injured in a motor vehicle accident that involved an automobile driven by an off duty member of the Massachusetts National Guard, Robert LaCasse. On the night of the accident, LaCasse had been served alcoholic beverages by Michael Morgante, another off duty member of the Massachusetts National Guard, at the Braintree National Guard armory, and was operating the automobile while under the influence of that alcohol.

The plaintiffs claimed at the jury trial that the Commonwealth, through its employees, was negligent and its negligence caused the decedent's death. The judge instructed the jury on two theories of negligence. He told the jury that, if Morgante was acting within the scope of his employment as a public employee while serving LaCasse the alcoholic beverages and was negligent, the jury could find the Commonwealth vicariously liable. The judge also instructed the jury that, if the National Guard had control over the alcohol served at the armory on the night of the accident, the jury could also find the Commonwealth liable as a social host.

The judge instructed the jury to answer two questions: (1) "Was the defendant, Commonwealth of Massachusetts, by its employee(s) negligent?" (2) "Was the defendant, Commonwealth of Massachusetts' negligence a substantial contributing cause of the death of the plaintiffs' decedent, Ruth T. Burroughs?" The jury answered both questions, "Yes." The jury did not specify, nor were they asked to specify, whether they found the Commonwealth negligent under the vicarious liability, or under the so-called "social host," theory. Because there was insufficient evidence to support a finding either that Morgante was acting within the scope of his employment by the Commonwealth when he served the alcoholic beverages to LaCasse or that the Commonwealth, through one or more of its employees in the course of employment, negligently permitted the availability of alcohol to LaCasse at the armory on the night of the accident, we reverse the judgment.

In measuring the legal sufficiency of the evidence to warrant a finding that Morgante was acting in the scope of his employment while serving liquor to LaCasse or that the Commonwealth, through its employees, was negligent in its control of the alcohol served at the armory, the test is whether

"anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978), quoting *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972). In order for an inference to be reasonable, it must be based on "probabilities rather than possibilities" and must not be the result of "mere speculation and conjecture." *Alholm* v. *Wareham*, 371 Mass. 621, 627 (1976).

Viewing the evidence in the light most favorable to the plaintiffs, the evidence would have warranted the jury in finding the following facts. On January 23, 1985, Michael Morgante attended a training meeting at the National Guard armory in Braintree. Morgante was a part-time member of the Massachusetts National Guard, and attended the meeting in his capacity as a platoon sergeant. Morgante was not ordered to attend the meeting, but he did so in order to prepare for a drill assembly on the following weekend. At about 7 P.M., National Guard officers dismissed the meeting, and Morgante proceeded to open the armory's noncommissioned officers (NCO) club. The NCO club was a room located in the armory and was furnished with a bar, bar stools, tables, a pool table and a dart board. All the furnishings were provided by individual members of the National Guard. The club sold alcoholic beverages from a bar. The beverages were the property of the club.[3] The National Guard itself, and therefore the Commonwealth, did not own the beverages.

Morgante served as the NCO club's bartender on the night of the accident as he had on other evenings. He was not required to be at the armory at that time and his bartending was voluntary and without compensation. One of the Guard members at the NCO club that evening was nineteen year old Robert LaCasse. LaCasse had not attended the training meeting that day, but had been informed at a prior training assembly that there would be alcoholic bar service at the armory on the evening of January 23.

Over a span of two and one-half hours, Morgante served LaCasse eight to ten twelve-ounce "rum and cokes" and at least one "boilermaker," which consists of a shot of liquor in

---

[3]The first beverages sold by the club were donated by an individual member of the National Guard. The money earned from the sale of those beverages was then put into a fund for the purchase of additional supplies.

a glass of beer. LaCasse became visibly intoxicated. When he left the NCO club at around 9:30 P.M., he had a blood alcohol level of approximately 0.15 per cent. Around midnight, without having consumed any additional alcohol, LaCasse caused the accident resulting in the death of the plaintiffs' decedent.

In 1986, in *Wang Lab., Inc.* v. *Business Incentives, Inc.,* 398 Mass. 854, 859 (1986), we set forth the factors relevant to scope of employment determinations bearing on the imposition of vicarious liability on employers for the tortious conduct of their employees as follows:

> "[C]onduct of an agent is within the scope of employment if it is of the kind he is employed to perform, *Douglas* v. *Holyoke Mach. Co.,* 233 Mass. 573, 576 (1919); if it occurs substantially within the authorized time and space limits, *Vallavanti* v. *Armour & Co.,* 260 Mass. 417, 419-420 (1927); and if it is motivated, at least in part, by a purpose to serve the employer, *Donahue* v. *Vorenberg,* 227 Mass. 1, 5 (1917); *McKeever* v. *Ratcliffe,* 218 Mass. 17, 20 (1914). See Restatement (Second) of Agency § 228 (1958)."

"The scope of employment test asks the question: is this the kind of thing that in a general way employees of this kind do in employment of this *kind*" (emphasis in original). *Kansallis Fin. Ltd.* v. *Fern,* 421 Mass. 659, 666 (1996).

We conclude that the evidence would not have warranted the jury in finding that, while bartending, Morgante was carrying out a duty imposed on him by his employment. General Laws c. 258, § 2, provides in material part that "[p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances . . . ." A National Guard member is "acting within the scope of his office or employment" if he is "acting in the performance of any lawfully ordered military duty." G. L. c. 258, § 1. For all that appears in the evidence, Morgante's bartending was nothing other than a way of relaxing and socializing that he performed without compensation and

that was neither explicitly nor implicitly ordered or even requested by his superiors. The evidence would not have warranted a finding that Morgante's "conduct . . . [was] of the kind he [was] employed to perform" or that it was "motivated, at least in part, by a purpose to serve the [Commonwealth]," *Wang Lab., Inc.* v. *Business Incentives, Inc., supra* at 859. The evidence would not have warranted a finding that his conduct, bartending at the NCO club, was "the kind of thing that in a general way" part-time National Guardsmen do.[4] See *Kansallis Fin. Ltd.* v. *Fern, supra.*

We turn now to the question whether the evidence would have warranted a finding of the Commonwealth's negligence under the "social host" theory of tort liability. In *McGuiggan* v. *New England Tel. & Tel. Co.*, 398 Mass. 152, 162 (1986), we stated:

> "We would recognize a social host's liability to a person injured by an intoxicated guest's negligent operation of a motor vehicle where a social host who knew or should have known that his guest was drunk, nevertheless gave him or permitted him to take an alcoholic drink and thereafter, because of his intoxication, the guest negligently operated a motor vehicle causing the third person's injury."

Thereafter, in numerous social host cases, we have held that a social host is not liable to a person injured as a result of a guest's excessive consumption of alcohol that was not owned or furnished by the host. See *Mosko* v. *Raytheon Co.*, 416 Mass. 395 (1993); *Cremins* v. *Clancy*, 415 Mass. 289 (1993); *Ulwick* v. *DeChristopher*, 411 Mass. 401 (1991). We reasoned that, as a practical matter, a social host ordinarily lacks the ability effectively to control his or her guests' consumption of alcohol not owned or furnished by the host. See *Mosko, supra* at 402; *Cremins, supra* at 294; *Ulwick, supra* at 406.

It may well be that the rule and rationale of the cited cases

---

[4]The Commonwealth has raised an additional appellate issue relative to the trial judge's jury instruction with respect to whether, in tending the bar, Morgante was acting within the scope of his employment. Because we have concluded that the evidence was insufficient to warrant a finding for the plaintiffs on that theory, we do not consider the Commonwealth's challenge to the instruction.

should not apply to this case where the host's ability to control the supply of liquor provided by others would appear to be significantly greater than the ability of the social hosts in those cases. We need not decide that issue, however, because the plaintiffs have not identified, and we have not discovered, sufficient evidence in the instant case to warrant a finding that anyone, while acting within the scope of his or her employment by the National Guard (i.e., Commonwealth), either by action or inaction failed to exercise that degree of care, vigilance, and forethought that an ordinarily prudent person would have exercised to ensure that no underage or intoxicated person would have access to alcoholic drinks while at the NCO club. As we have discussed above, Morgante was not shown to have been such a person. The plaintiffs have not identified, and we have not found, evidence to show that, in allowing Morgante to tend bar or in any other way, those in authority at the armory failed to take reasonable precautions to prevent that which occurred and gave rise to this litigation.

Because there was insufficient evidence to warrant a finding for the plaintiffs on either theory of their case, we reverse the judgment and order the entry of judgment for the Commonwealth.

*So ordered.*