Gants, J.
The plaintiffs have brought this medical malpractice action alleging that they suffered injuries from the defendants’ negligent delay in diagnosing plaintiff Maria Miller’s Hodgkin’s Disease. Count II of the Complaint alleges that defendant Ricardo Sanchez, a physician with expertise in diagnostic radiology, was negligent in interpreting the diagnostic MRI taken of Ms. Miller. The plaintiffs seek to hold the defendant Shields Healthcare Group, Inc. (“Shields Healthcare”), a Massachusetts corporation, vicariously liable for Dr. Sanchez’s alleged negligence, since it was Dr. Sanchez’s employer at the time of the MRI and his reading of the MRI was within the scope of his employment.[1] Shields Healthcare has moved for sum *592 mary judgment on the vicarious liability claim. After hearing and for the reasons stated below, the motion for summary judgment is DENIED.
BACKGROUND
In evaluating a motion for summary judgment, I must rely on facts not in dispute as well as disputed facts viewed in the light most favorable to the nonmoving party. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). Consequently, the facts stated below are presented in the light most favorable to the plaintiffs and should not be misunderstood as findings of the court.
On or about December 20, 1993, Ms. Miller was referred to Shields Healthcare, a provider of outpatient imaging services, for an MRI examination of her neck. Dr. Sanchez interpreted the MRI and prepared a report memorializing his interpretation. At that time, Dr. Sanchez was an employee of Shields Healthcare, holding positions both as a staff radiologist and the Assistant Medical Director. He had been hired by Dr. Stephen Sweriduk, the Medical Director, to whom he reported. Dr. Sweriduk retained responsibility for quality control at Shields Healthcare. Dr. Sanchez typically worked an eight hour day at Shields Healthcare, five days per week, with occasional weekend call responsibilities, and received a salary and benefits that did not depend on the number of films that he read. There is no dispute that Dr. Sanchez acted alone in interpreting Ms. Miller’s MRI and preparing his report, and that no one routinely reviewed his work.
DISCUSSION
Shields Healthcare contends that, since Dr. Sanchez interpreted the MRI and prepared his report by himself, with no superior looking over his shoulder or otherwise reviewing his work, it may not be vicariously liable for any negligence that he may have committed. One would think that the law governing this issue would be clear and well-established but, at least to this reader of that law, it is not. Rather, there appear to be at least three alternative legal formulations that may govern this decision. To understand why, one must step back in time and look at the development of this case law.
I. The Traditional Respondeat Superior Formulation
Strangely enough, this analysis must begin with a case where an electric company employee used his own car to transport a floodlight and, en route, struck another automobile. Khoury v. Edison Electric Illuminating Co., 265 Mass. 236 (1928). Although it was clear that the driver at fault was an employee of the defendant acting within the scope of his employment, the Supreme Judicial Court did not find those circumstances to be dispositive as to whether the employer was vicariously liable under the principle of respondeat superior. Rather, it concluded that an employee may be a servant as to one undertaking and an independent contractor as to another. Id. at 239. In determining whether the employee’s use of his own car to deliver his employer’s floodlight was an undertaking of a servant rather than an independent contractor, the Court declared:
The test of the relationship is the right to control. It is not necessary that there be any actual control by the alleged master to make one his servant or agent, but merely a right of the master to control. If there is no right of control there is no relationship of master and servant. If the power of control rests with the person employed, he is an independent contractor. In order that the relation of master and servant may exist, the employee must be subject to control by the employer, not only as to the result to be accomplished but also as to the means to be used.
Id. at 238. Here, since the employer had no duly to control the employee in the operation of his own car or in the car’s maintenance, the Court held that the employee was an independent contractor when he delivered the floodlight. Id. at 239-40.
Foriy-one years later, the Supreme Judicial Court overturned the Khoury decision. Konick v. Berke, Moore Company, Inc., 355 Mass. 463 (1969). Facing similar facts to those in Khoury — an employee caused an accident while driving his own car to pick up the company payroll at the direction of his supervisor — the Supreme Judicial Court found the employer vicariously liable for its employee’s negligence. Id. at 467-68. In doing so, the Court expressly repudiated its holding in Khoury, “We are of the opinion that we should no longer follow our cases to the extent that they indicate that a master-servant relationship does not exist unless the employer has a right to control the manner and means (the details, in other words) of operating the car.” Id. at 468. The Court offered two alternative formulations for its decision, both pragmatically meaning the same thing. First, it concluded that vicarious liability is found whenever there is an employer-employee relationship and conduct within the scope of the employee’s employment, since an employer always has the right to direct and control that conduct. Quoting the Fifth Circuit’s decision in Hinson v. United States, 257 F.2d 178, 181 (1958), the Court declared:
Control or the right to control the manner or means of performing the task hardly seems decisive. If the relationship of master and servant exists and if what the employee is doing is in the furtherance of the master’s business, i.e. in the scope of his employment, the law gives the master the right of direction and control.
Id. at 467-68. Alternatively, the Court held that the standard for vicarious liability is simply that the employer has the right to control the general activities of its employee: it need not, as it had said in Khoury, have *593 the right to control the specific manner in which the employee performs those duties. Id. at 467. “In other words, if there is a right to control the employee’s general activities, he is a servant, even though the master may not have the right to control the details of the operation of the car when the servant is carrying out an errand for his master.” Id.
The broad scope of vicarious liability set forth in Konick and articulated in the Restatement (Second) of Agency remains the general standard today. In Massachusetts, an employer is vicariously liable for the tortious conduct of its employee committed while acting in the scope of his employment. Burroughs v. Commonwealth, 423 Mass. 874, 877 (1996); Restatement (Second) of Agency, §219. Conduct falls within the scope of employment if:
1. the conduct is “of the kind he is employed to perform”;
2. “it occurs substantially within the authorized time and space limits”; and
3. “it is motivated, at least in part, by a purpose to serve the employer.”
Burroughs v. Commonwealth, 423 Mass. at 877 quoting Wang Lab., Inc. v. Business Incentives, Inc., 398 Mass. 854, 859 (1986). See also Kansallis Finance Ltd. v. Fern, 421 Mass. 659, 666 (1996) (“The scope of employment test asks the question: is this the kind of thing that in a general way employees of this kind do in employment of this kind") (emphasis in original).
The broad scope given by the Supreme Judicial Court to vicarious liability based on actual authority is justified by this basic principle:
[A]s between two innocent parties — the principal-master and the third party — the principal-master who for his own purposes places another in a position to do harm to a third party should bear the loss ... A principal who requires an agent to transact his business, and can only get that business done if third parties deal with the agent as if with the principal, cannot complain if the innocent third party suffers loss by reason of the agent’s act. Similarly, the master who must put an instrument into his servant’s hands in order to get his business done, must also bear the loss if the servant causes harm to a stranger in the use of that instrument as the business is transacted.
Kansallis Finance Ltd. v. Fern, 421 Mass. at 664-65.
If this basic principle and the broad scope of vicarious liability that emanates from it applied to this case, there would be no doubt that Shields Healthcare would be vicariously liable for the alleged tortious conduct of Dr. Sanchez. There is no dispute that he was a full-time employee of Shields Healthcare, and that his interpretation of the MRI and preparation of his report were within the scope of his employment. Nor can there be any dispute that Shields Healthcare, as a corporation, chose to act through Dr. Sanchez in providing radiology services to Ms. Miller; it figuratively put the MRI film into his hands for analysis.
II. The Khoury/Kelley Formulation
The Supreme Judicial Court has never declared that there is a physician exception to this broad scope of respondeat superior. Yet, through the unusual evolution of the case law, one could argue that this is what has happened.
In 1980, the Supreme Judicial Court considered the Superior Court’s dismissal of a negligence claim against four doctors and a hospital regarding the provision of electric shock therapy and subsequent brain surgery. Kapp. v. Ballantine, 380 Mass. 186 (1980). In upholding the dismissal of the hospital, the Court noted that there was no factual basis in the record to support the plaintiffs contention that the doctors were servants of the hospital. Out of an abundance of caution, the Court continued:
Even if we accept certain facts argued by the plaintiff as if they were documented in the record (facts such as staff affiliation of the defendant doctors with the hospital), they would be insufficient to show that the hospital had power of control or direction over the professional conduct of the physicians.
Id. at 195. In declaring this standard, the Court cited only one case — Khoury—which eleven years earlier had been overturned in Konick. That same year, in considering whether the Harvard Community Health Plan could be liable for the alleged tortious conduct of a doctor and nurse who were its employees, the Supreme Judicial Court cited only Kapp in declaring, “if the Plan is to held vicariously liable, there must be a factual basis for inferring that the Plan had power of control or direction over the conduct in question.” Gugino v. Harvard Community Health Plan, 380 Mass. 464, 468 (1980).
This new standard of vicarious liability for hospitals and health care plans, focusing on whether the hospital or plan “had power of control or direction” over the tortious conduct, was repeated two years later by the Supreme Judicial Court in Harnish v. Children's Hospital Medical Center, 387 Mass. 152 (1982). There, in a case against three surgeons and a hospital based solely on the alleged lack of informed consent, the plaintiffs offer of proof, like in Kapp, did not show the surgeons’ affiliation with the hospital. Id. at 159. Also like in Kapp, the Harnish Court declared, “Even if we were to assume staff affiliation, there is nothing to show that the hospital had power of control over the surgeons’ professional conduct.” Id. The Harnish Court cited two cases for this proposition: Kapp and Khoury. Id.
In none of these cases did the Supreme Judicial Court explain its use of this standard. Nor did the standard have consequence in any of these cases. In Kapp and Harnish, there was no evidence that the *594 doctors were employees of the hospital, 380 Mass. at 195; 387 Mass. at 159; and in Gugino, where the doctor and nurse plainly were employees of the Plan, the Court vacated the dismissal of the case as to all defendants, including the Plan, and remanded it for trial. 380 Mass. at 465. In adopting this standard, the Court appears to have focused on the issue of whether the physicians and nurses were truly employees of the hospital or the health plan, or were simply independent contractors affiliated with the hospital or the plan, because the right to control an agent’s activities has long been the “guiding principle” in making this determination. Kelley v. Rossi, 395 Mass. 659, 661 (1985). See also Restatement (Second) of Agency, §220(1) (“A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control") (emphasis added). That focus is appropriate where there is ambiguity as to whether the agent is an employee or an independent contractor but, after Konick, that focus is misplaced where the agent is plainly an employee, because an employer always has the general right of direction and control over an employee. Konick at 467-68. When a physician or nurse is plainly an employee, the focus should simply be on whether the conduct was within the scope of employment.
This standard, as applied to physicians who plainly were employees of a hospital or health care plan, may have subsequently been discarded as dicta if it had not been reinforced by another line of cases under the Massachusetts Tort Claims Act (“the Act”). G.L.c. 258, §§1 et seq. Under the Act, the term “public employee” is not defined, but “public employer” is defined as a public entity “which exercises direction and control over the public employee.” G.L.c. 258, §1. As a result, when former patients in public hospitals claimed that their publicly-paid physicians had committed medical malpractice, those physicians argued that they were “public employees” as defined in the Act and therefore were immune from suit for negligent or wrongful acts under the Act. See G.L.c. 258, §2. This statutory language implicitly defining a “public employee” as one over whom his public employer “exercises direction and control” is closer to the original (and later discredited) common law formulation of vicarious liability in Khoury than the prevailing common law formulation in Konick. Consequently, when the Supreme Judicial Court first interpreted this statutory language, it recognized that a physician, by the very nature of his duties, would rarely be found to be a “public employee”:
It is true, however, that the very nature of a physician’s function tends to suggest that in most instances he will act as an independent contractor. Another person, unless a physician himself, would have no right (or desire) to exercise control over the details of the physician’s treatment of a patient; the profession is distinct and requires a high level of skill and training; and the physician must use independent judgment. . . There is some authority for the proposition that a physician is not a servant where the principal cannot control the details of the physician’s activities.
Kelley v. Rossi, 395 Mass. at 662. This language, focused on the statutory definition of a “public employee” under the Act, later was used in a common law context, along with language from Kapp and Harnish, to determine whether an independent practice association should be vicariously liable for the conduct of a physician. See Chase v. Independent Practice Association, Inc., 31 Mass.App.Ct. 661, 665 (1991).
If this Khoury /Kelley formulation, finding vicarious liability only when an employer exercises control over the details of the physician’s treatment of a patient, were to apply to this case, summary judgment would be appropriate, because it is undisputed that Shields Healthcare exercised no such control over Dr. Sanchez. Indeed, with this formulation, a hospital or health care plan would rarely be vicariously liable for the tortious conduct of its employee physicians, except for its residents whose work is overseen by the attending physicians and who traditionally have been viewed as servants of the hospital in which they work. Kelley v. Rossi, 395 Mass. at 663.
III. The Modified Khoury/Kelley Formulation
The Supreme Judicial Court has never repudiated its narrow interpretation in Kelley of the statutory definition of a “public employee” as applied to physicians, but in subsequent cases it has not applied that narrow interpretation to the facts before it. In McNamara v. Honeyman, 406 Mass. 43 (1989), a jury found that a University of Massachusetts Medical School staff psychiatrist was a “public employee” and was negligent in his care of a psychiatric patient. Although using the standard declared in Kelley, the Supreme Judicial Court found the evidence sufficient to permit a jury to conclude that the University of Massachusetts “controlled the details of his activities.” Id. at 48. That evidence showed that his employer regulated his hours and determined the ward he worked in and the patients he treated. Id. It also showed that he treated no private patients and that his income was purely his salary, which did not depend on the number of patients he treated. Id. Even though there apparently was no evidence of anyone controlling the details of his treatment of patients, this was not deemed necessary to find him a “public employee.” In essence, the standard that an employer must “exercise control over the details of the physician’s treatment of a patient" to be vicariously liable, had been re-interpreted to require that the employee simply be subject to the direction and control of the public employer.
This implicit change was articulated one year later, in Hopper v. Callahan, 408 Mass. 621, 634 (1990), *595 where the Supreme Judicial Court, in determining whether another University of Massachusetts psychiatrist was a “public employee," declared, “The issue here is whether [the psychiatrist] was subject to the direction and control of the Commonwealth." Id. at 634. The Court agreed that there was a genuine dispute of material fact on this issue, noting that “the right to control hours and working schedules and the right to supervise [the psychiatrist’s] activities and who his patients would be are also relevant considerations.” Id. See also Williams v. Hartman, 413 Mass. 398, 400-01 (1992) (finding dispute of material fact as to whether yet another University of Massachusetts psychiatrist was a “public employee”).
If this modified Khoury/Kelley formulation, focusing on whether Dr. Sanchez was subject to the direction and control of Shields Healthcare, were to apply to this case, then summary judgment must be denied. As in McNamara and Hopper, the plaintiffs have presented evidence that Shields Healthcare determined Dr. Sanchez’s hours, that it paid him a salary that did not depend on the number of patients he saw, that it provided him with all his patients, and that his superior, the Medical Director, retained the power to supervise his work and ensure its quality.
IV. Synthesizing the Three Alternative Formulations
Given the unusual manner in which the law of vicarious liability has evolved with respect to physicians, one cannot predict with certainty which of these three formulations would today be declared by the Supreme Judicial Court as the common law standard. I conclude, however, that the second formulation is the least likely to emerge as the law, at least with respect to the common law of vicarious liability. Since this is the only formulation in which summary judgment would be granted, I shall deny Shields Healthcare’s motion for summary judgment.
The first formulation is the most likely to apply in the context of this case, where the physician admits that he is an employee of the defendant corporation and the alleged negligence is plainly within the scope of his employment. Under these circumstances, there is no reason to focus on the employer’s right to control, since there is not a dispute, as there often is with physicians, whether the agent was acting as an employee or an independent contractor of the hospital or health care plan. Even if the power to control were properly the focus, it is more likely that the issue will be framed in accordance with Konick, which looks at whether the employer has the right to control the employee’s general activities, rather than in accordance with the discredited Khoury case, which looks at whether the employer has the right to control the detailed manner and means in which the employee performs his job. Indeed, without expressly saying so, that is where the Supreme Judicial Court has moved in the Tort Claims Act cases that followed Kelley.
At trial, the court will have the unenviable task of determining which of these formulations will be presented to the jury for factual findings, and what ultimately to do with those findings. Since I am unlikely to be the trial judge, it is not appropriate for me to decide how that should be done.
ORDER
For the foregoing reasons, this Court ORDERS that the defendant Shields Healthcare’s motion for summary judgment is DENIED.

The plaintiffs have not alleged that Shields Healthcare was negligent in its training or supervision of Dr. Sanchez.