Linda SHERRILL, et vir, Appellants,

v.

Dr. Charles McBRIDE, Appellee.

No. A2296.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

July 30, 1980.

James H. Shoemake, Shoemake, Urmy &
Luquette, Houston, for appellants.

John T. Golden, Vinson & Elkins, Houston, for appellee.

Before BROWN, C. J., and PAUL PRESSLER and JUNELL, JJ.

JUNELL, Justice.

This appeal from a take-nothing judgment in a medical malpractice suit contends that the jury's responses to the determinative issues were against the great weight and preponderance of the evidence. We will affirm.

Appellant Linda Sherrill, having had a malignant melanoma on her right foot excised, requested her Tulsa, Oklahoma, surgeon to obtain an opinion regarding postoperative treatment from the M. D. Anderson Hospital and Tumor Institute of the University of Texas at Houston. Appellee, Dr. Charles McBride of the hospital's department of surgery, responded to the Tulsa surgeon's inquiry in a letter stating that the preferred treatment at M. D. Anderson was an iliac dissection and perfusion. In the same letter he offered to make arrangements to perform the surgery.

An iliac dissection and perfusion is a chemotherapeutical prophylaxis. The patient's limb is isolated from the rest of the body; circulation is provided by use of a heart-lung apparatus; catheters are inserted into the major artery and vein going into the extremity, an incision having been made in the groin; a tourniquet is placed over the catheters to prevent the drug which will be introduced through the catheters from entering the rest of the body; and the leg is completely wrapped in order to raise its temperature significantly during the operation. At the conclusion of the treatment the drug is completely washed out of the leg, circulation is restored to the rest of the body and the leg is undraped. Testimony during the trial indicated that at the end of ten years 72% of patients receiving the chemotherapy were disease free as compared to 45% among those who did not avail themselves of it. Thus, it appears that a patient who undergoes the treatment decreases his or her chances of a recurrence by approximately 60%.

In the therapeutic operation on Mrs. Sherrill, performed by Dr. McBride and his surgical team on January 11, 1974, a large amount of phenylalanine mustard was introduced into the limb by the method described above. Early in the operation it was determined that a catheter had kinked. The tourniquet was removed, and the catheter was replaced. When Mrs. Sherrill's leg was undraped at the conclusion of the operation it was discovered that she had suffered a large hematoma or bruise on the back of her thigh. This hematoma subsequently became infected and, despite constant treatment, ultimately resulted in the disarticulation—or amputation—of her leg at the hip. This suit followed.

In reply to special issues the jury found that (1) there was no failure to obtain an informed consent from the appellant; (2) Dr. McBride did not fail to use ordinary care in performing the perfusion surgery; and (3) that Mrs. Sherrill suffered no monetary damages occasioned by the amputation of her leg. These are the jury responses that appellants, Mrs. Sherrill and her husband, Kenneth, here urge are contrary to the great weight and preponderance of the evidence.

■ Where the sufficiency of the evidence to support a verdict is challenged, we must consider all of the evidence, including both the evidence in support of the verdict and that which is contrary thereto. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1952).

■ Appellee admits that he did not inform his patient of the risk of losing her leg. Basic to a suit alleging failure to make reasonable medical disclosure is the offering of proof by expert medical testimony of what a reasonable physician of. the same school in the same or a similar community would have disclosed to a patient in the same or similar circumstances, causation and damages. *Wilson v. Scott*, 412 S.W.2d 299, 302 (Tex.Sup.1967); Perdue, the Law of Texas Medical Malpractice 195 (1975).

■ During the course of the trial Dr. Ralph Roan, a general surgeon practicing in San Francisco, California, who is not an oncologist, i.e., a specialist in the field of tumors, testified on behalf of appellants. He had never performed an iliac dissection and perfusion, albeit he was familiar with the technique and had assisted in operations, such as heart surgery and kidney transplants, where the perfusion technique was used.

Testifying for the appellee were Dr. McBride, who had performed some 500 perfusions and was the author of seven or

eight articles on the technique used; Dr. Edward T. Krementz, Professor of Surgery at Tulane University, who in cooperation with two other oncologists had originated the perfusion operation involved in Mrs. Sherrill's therapy, had performed over a thousand perfusions, in excess of 850 of which involved melanoma or extremity lesion, and was a prolific writer on the subject; and Dr. Robert C. Hickey, the Director of the M. D. Anderson Hospital, a surgical oncologist who had performed surgical perfusion. The last testified that appellee McBride was the "most knowledgeable person in perfusion in this country."

None of these medical experts testified as to the incidence of loss of limb to the number of operations performed in the country or even in the community. Dr. Krementz testified that in his own experience in the early years of the operation he had had 3 patients lose limbs after the operation, but that, except for a partial amputation at about mid-calf caused by poor circulation, none of his patients had lost a leg since 1963. Dr. McBride testified that except for Mrs. Sherrill none of his patients had lost a leg in the 500 operations he had performed. Dr. Roan offered no statistics as to the incidence of amputation but testified that loss of limb was mentioned as a hazard in medical literature.

According to the testimony adduced, therefore, the risk of loss of limb was remote, in fact a bare possibility. Under these circumstances we are of the opinion that the jury's findings that Dr. McBride did not deviate from the standard of informed consent practiced in the community in 1974 has adequate support in the record. *Ross v. Sher*, 483 S.W.2d 297 (Tex.Civ.App.-Houston [14th Dist.] 1972, writ ref'd n. r. e.).

Additionally, the jury as the judge of credibility was free to disregard Dr. Roan's testimony that "the warnings to the patient should include the known potential risks and complications of the operation" and that "literature that I have reviewed . . . includes the mention of limb loss, amputation." *Southwestern Bell Tel. Co. v.*

*Griffith*, 575 S.W.2d 92 (Tex.Civ.App.-Corpus Christi 1978, writ ref'd n. r. e.). Appellants' point of error complaining of the jury's finding of no lack of informed consent is overruled.

Appellants contend in their second point of error that the jury's finding of no failure by appellee to use ordinary care is against the great weight and preponderance of the evidence. Here appellants had the burden to persuade the jury by a preponderance of expert testimony that the disarticulation of Mrs. Sherrill's leg was caused by Dr. McBride's lack of skill or attention. *Hart v. Van Zandt*, 399 S.W.2d 791 (Tex.Sup.1965); *Hood v. Phillips*, 554 S.W.2d 160 (Tex.Sup.1977). This they have failed to do.

Dr. Roan was the medical expert relied upon to prove negligence. He testified that there was a myriad of possibilities, but that there were only three probabilities as to what caused the hemorrhage that resulted in Mrs. Sherrill's loss. These probabilities were (1) that in replacement of the kinked catheter the vein may have been punctured; (2) that, in re-wrapping, the tourniquet may have been applied too tightly and ruptured some blood vessels; and (3) that the catheter may not have been directed into the major blood vessel supplying the entire leg but into the major vessel which supplies the thigh. However, there was no evidence showing or even tending to show that any one of the above so-called "probabilities" actually occurred, and hence there was no showing that Dr. McBride was negligent with respect to any of them. There was substantial medical testimony controverting each of them. The jury was justified in returning a negative answer to the issue. Appellants' second point of error is overruled.

Appellants urge their third point of error, dealing with the jury's failure to find Mrs. Sherrill suffered any monetary damages occasioned by the loss of her limb, only if either of their other points of error is sustained. It is well established in Texas that erroneous failure to find damages is

harmless error where negligence of the defendant has been negated. *Southern Pine Lumber Co. v. Andrade*, 124 S.W.2d 334 (Tex.Com.App.1939, opinion adopted); Tex. R.Civ.P. 434. Thus, we do not rule on this point of error.

Judgment affirmed.