JANINE HARNISH vs. CHILDREN'S HOSPITAL MEDICAL
CENTER & others.[1]

Suffolk.   March 5, 1982. — August 13, 1982.

Present: LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

Negligence, Medical malpractice. Doctor, Duty to disclose risk. Medical
   Malpractice, Consent to medical treatment.

A physician owes to his patient the duty to disclose in a reasonable manner
   all significant medical information that the physician possesses or rea-
   sonably should possess that is material to the patient's making an in-
   formed judgment whether to give or withhold consent to a medical or
   surgical procedure, and the physician's failure to make such a disclo-
   sure constitutes professional misconduct within the ambit of G. L.
   c. 231, § 60B. [153-157]
In an action for medical malpractice against a physician for failing to in-
   form the plaintiff of a medical or surgical risk, whether the unrevealed
   risk materialized is a medical question appropriate to the inquiry of a
   medical malpractice tribunal pursuant to G. L. c. 231, § 60B; how-
   ever, the additional proof required of the plaintiff at trial that, had the
   proper information been provided, neither he nor a reasonable person
   in similar circumstances would have undergone the procedure, is not
   related to medical questions, and thus is not appropriate to the tribu-
   nal's inquiry. [157-158]
A plaintiff's offer of proof before a medical malpractice tribunal convened
   pursuant to G. L. c. 231, § 60B, on her allegation that the defendants
   had failed to inform the plaintiff of the risks of surgery they performed
   on her, was sufficient to raise a question appropriate for judicial in-
   quiry with respect to two of the four defendants. [158-159]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 6, 1981.

After consideration of the case by a medical malpractice
tribunal, a motion to dismiss was allowed by Zobel, J.

---

[1] Dr. Anthony Holmes, Dr. Robert Gilman, and Dr. John B. Mulhken.

The Supreme Judicial Court granted a request for direct appellate review.

*Joseph G. Abromovitz* for the plaintiff.

*Joseph L. Doherty, Jr.,* for the defendants.

O'CONNOR, J. The plaintiff underwent an operation to remove a tumor in her neck. During the procedure, her hypoglossal nerve was severed, allegedly resulting in a permanent and almost total loss of tongue function.

The plaintiff's complaint charges the defendant physicians and hospital with misrepresentation and negligence in failing to inform her before surgery of the risk of loss of tongue function. The complaint alleges that the purpose of the operation was cosmetic, that the loss of tongue function was a material and foreseeable risk of the operation, and that, had the plaintiff been informed of this risk, she would not have consented to the operation. There is no claim that the operation was negligently performed.

A medical malpractice tribunal, convened pursuant to G. L. c. 231, § 60B, concluded that the plaintiff's offer of proof was insufficient to raise a question appropriate for judicial inquiry. The action was dismissed after the plaintiff failed to post a bond in accordance with G. L. c. 231, § 60B. The plaintiff appeals from the judgment of dismissal, claiming that her offer of proof satisfied the requirements of the directed verdict test, as defined in *Kapp* v. *Ballantine,* 380 Mass. 186, 192 (1980), and *Little* v. *Rosenthal,* 376 Mass. 573, 578 (1978). She argues that her offer of proof was sufficient to raise a question of liability under the doctrine of lack of informed consent.[2] We reverse so much of the judgment of dismissal as applies to Drs. Holmes and Mulliken, and affirm the dismissal of the complaint against Dr. Gilman and Children's Hospital Medical Center.

1. *The rule of liability.* A medical malpractice tribunal has jurisdiction over actions for "malpractice, error or mis-

---

[2] In her brief, the plaintiff asserts that her claim is based solely on the doctrine of lack of informed consent. Since she does not present argument on the propriety of the tribunal's ruling as it relates to her claims of misrepresentation, we do not address this issue on appeal. *Commonwealth* v. *Horton,* 376 Mass. 380, 388 (1978), cert. denied, 440 U.S. 923 (1979).

take against a provider of health care." G. L. c. 231, § 60B, inserted by St. 1975, c. 362, § 5. The performance of a surgical procedure by a physician without the patient's consent constitutes professional misconduct, is malpractice within G. L. c. 231, § 60B, and is subject to the procedures established by this statute. *Lubanes* v. *George*, 386 Mass. 320, 325 (1982).

"There is implicit recognition in the law of the Commonwealth, as elsewhere, that a person has a strong interest in being free from nonconsensual invasion of his bodily integrity. . . . In short, the law recognizes the individual interest in preserving 'the inviolability of his person.' *Pratt* v. *Davis*, 118 Ill. App. 161, 166 (1905), aff'd, 224 Ill. 300 (1906). One means by which the law has developed in a manner consistent with the protection of this interest is through the development of the doctrine of informed consent." *Superintendent of Belchertown State School* v. *Saikewicz*, 373 Mass. 728, 738-739 (1977). See also *Matter of Spring*, 380 Mass. 629, 634, 637-638 (1980); *Cobbs* v. *Grant*, 8 Cal. 3d 229, 242 (1972); *Schloendorff* v. *Society of the New York Hosp.*, 211 N.Y. 125, 129-130 (1914). "[I]t is the prerogative of the patient, not the physician, to determine . . . the direction in which . . . his interests lie." *Cobbs* v. *Grant, supra* at 242. *Canterbury* v. *Spence*, 464 F.2d 772, 781 (D.C. Cir.), cert. denied, 409 U.S. 1064 (1972). Every competent adult has a right "to forego treatment, or even cure, if it entails what for him are intolerable consequences or risks however unwise his sense of values may be in the eyes of the medical profession." *Wilkinson* v. *Vesey*, 110 R.I. 606, 624 (1972). Knowing exercise of this right requires knowledge of the available options and the risks attendant on each. *Canterbury* v. *Spence, supra* at 780. *Cobbs* v. *Grant, supra* at 242-243. We hold, therefore, that a physician's failure to divulge in a reasonable manner to a competent adult patient sufficient information to enable the patient to make an informed judgment whether to give or withhold consent to a medical or surgical proce-

dure constitutes professional misconduct and comes within the ambit of G. L. c. 231, § 60B.[3]

While we recognize that a patient ordinarily cannot make an intelligent decision whether to undergo a medical or surgical procedure without receiving from the physician information significant to the decision, *Canterbury* v. *Spence, supra* at 780, 782, we also recognize that there are limits to what society or an individual can reasonably expect of a physician in this regard. Medical matters are often complex. Recommendations of treatment frequently require the application of considerable medical knowledge gained through extensive training and experience. Communication of scientific information by the trained physician to the untrained patient may be difficult. The remotely possible risks of a proposed treatment may be almost without limit. The patient's right to know must be harmonized with the recognition that an undue burden should not be placed on the physician. These interests are accommodated by the rule that we adopt today, that a physician owes to his patient the duty to disclose in a reasonable manner all significant medical information that the physician possesses or reasonably should possess that is material to an intelligent decision by the patient whether to undergo a proposed procedure. The information a physician reasonably should possess is that information possessed by the average qualified physician or, in the case of a specialty, by the average qualified physician practicing that specialty. *Brune* v. *Belinkoff,* 354 Mass. 102, 109 (1968). *Haggerty* v. *McCarthy,* 344 Mass. 136,

---

[3] For recent cases in accord with this holding, see *Steele* v. *St. Paul Fire & Marine Ins. Co.,* 371 So. 2d 843 (La. App. 1979); *Gerety* v. *Demers,* 92 N.M. 396 (1978); *Scott* v. *Bradford,* 606 P.2d 554 (Okla. 1979); *Holland* v. *Sisters of St. Joseph of Peace,* 270 Or. 129 (1974); *Cornfeldt* v. *Tongen,* 295 N.W.2d 638 (Minn. 1980); *Nixdorf* v. *Hicken,* 612 P.2d 348 (Utah 1980); *Small* v. *Gifford Memorial Hosp.,* 133 Vt. 552 (1975); *Klink* v. *G.D. Searle & Co.,* 26 Wash. App. 951 (1980); *Miller* v. *Kennedy,* 11 Wash. App. 272 (1974), aff'd, 85 Wash. 2d 151 (1975).

For a thorough discussion of the subject, see *Canterbury* v. *Spence,* 464 F.2d 772 (D.C. Cir.), cert. denied, 409 U.S. 1064 (1972); *Cobbs* v. *Grant,* 8 Cal. 3d 229 (1972); *Wilkinson* v. *Vesey,* 110 R.I. 606 (1972); Waltz & Scheuneman, Informed Consent to Therapy, 64 Nw. U.L. Rev. 628 (1970).

139 (1962). What the physician should know involves professional expertise and can ordinarily be proved only through the testimony of experts. See *id.* at 139-142. *Wilkinson* v. *Vesey, supra* at 626. However, the extent to which he must share that information with his patient depends upon what information he should reasonably recognize is material to the plaintiff's decision. *Canterbury* v. *Spence, supra* at 787. *Wilkinson* v. *Vesey, supra* at 627-628. "Materiality may be said to be the significance a reasonable person, in what the physician knows or should know is his patient's position, would attach to the disclosed risk or risks in deciding whether to submit or not to submit to surgery or treatment." *Id.* at 627. The materiality determination is one that lay persons are qualified to make without the aid of an expert. *Canterbury* v. *Spence, supra* at 784-785. *Wilkinson* v. *Vesey, supra* at 625. Appropriate information may include the nature of the patient's condition, the nature and probability of risks involved, the benefits to be reasonably expected, the inability of the physician to predict results, if that is the situation, the irreversibility of the procedure, if that be the case, the likely result of no treatment, and the available alternatives, including their risks and benefits. *Canterbury* v. *Spence, supra* at 781-783, 787-788. The obligation to give adequate information does not require the disclosure of all risks of a proposed therapy, *Wilkinson* v. *Vesey, supra* at 627, or of information the physician reasonably believes the patient already has, such as the risks, like infection, inherent in any operation. *Canterbury* v. *Spence, supra* at 788.

Many jurisdictions have adopted the rule that a physician must disclose to his patient only such information as is customarily disclosed by physicians in similar circumstances.[4]

---

[4] See, e.g., *Dessi* v. *United States,* 489 F. Supp. 722 (D. Va. 1980); *Watkins* v. *United States,* 482 F. Supp. 1006 (M.D. Tenn. 1980); *Fuller* v. *Starnes,* 268 Ark. 476 (1980); *Bloskas* v. *Murray,* 618 P.2d 719, 723 (Colo. App. 1980); *Wagner* v. *Olmedo,* 365 A.2d 643 (Del. 1976); *Buckner* v. *Allergan Pharmaceuticals, Inc.,* 400 So. 2d 820 (Fla. Dist. Ct. App. 1981); *Ziegert* v. *South Chicago Community Hosp.,* 99 Ill. App. 3d 83 (1981); *Collins* v. *Meeker,* 198 Kan. 390 (1967); *Woolley* v. *Henderson,*

We think that the better rule is the one we adopt today. The customary practice standard overlooks the purpose of requiring disclosure, which is protection of the patient's right to decide for himself. *Canterbury* v. *Spence, supra* at 783-787. *Wilkinson* v. *Vesey, supra* at 625. *Cobbs* v. *Grant, supra* at 243, 245.

We recognize that, despite the importance of the patient's right to know, there may be situations that call for a privilege of nondisclosure. *Cobbs* v. *Grant, supra* at 245-246. For instance, sound medical judgment might indicate that disclosure would complicate the patient's medical condition or render him unfit for treatment. "Where that is so, the cases have generally held that the physician is armed with a privilege to keep the information from the patient . . . . The physician's privilege to withhold information for therapeutic reasons must be carefully circumscribed, however, for otherwise it might devour the disclosure rule itself. The privilege does not accept the paternalistic notion that the physician may remain silent simply because divulgence might prompt the patient to forego therapy the physician feels the patient really needs" (footnotes omitted). *Canterbury* v. *Spence, supra* at 789. A full discussion of the privilege is neither required nor attempted here, because the burden of proving it must rest with the physician, *Canterbury* v. *Spence, supra* at 791, and thus the question of privilege is inappropriate to the directed verdict standard to be applied to the plaintiff's offer of proof before the medical malpractice tribunal. *Little* v. *Rosenthal, supra* at 578. *Kapp* v. *Ballantine, supra* at 760.

2. *Causation.* We turn to the question of causation. "An unrevealed risk that should have been made known must

418 A.2d 1123 (Maine 1980); *Llera* v. *Wisner,* 171 Mont. 254 (1976); *Folger* v. *Corbett,* 118 N.H. 737 (1978); *Calabrese* v. *Trenton State College,* 162 N.J. Super. 145 (1978), aff'd, 82 N.J. 321 (1980); *Kaplan* v. *Haines,* 96 N.J. Super. 242 (1967), aff'd, 51 N.J. 404 (1968); *German* v. *Nichopoulos,* 577 S.W.2d 197 (Tenn. App. 1978); *Sherrill* v. *McBride,* 603 S.W.2d 365 (Tex. Civ. App. 1980); *Bly* v. *Rhoads,* 216 Va. 645 (1976).

materialize, for otherwise the omission, however unpardon-able, is legally without consequence." *Canterbury* v. *Spence, supra* at 790. *Schroeder* v. *Lawrence,* 372 Mass. 1, 5 (1977). Whether the alleged undisclosed risk materialized is a medical question appropriate to the tribunal's inquiry. At trial, the plaintiff must also show that had the proper information been provided neither he nor a reasonable person in similar circumstances would have undergone the procedure. *Id.* at 5. *Wilkinson* v. *Vesey, supra* at 628-629. Such proof, not relating to medical questions, is not appropriate to the tribunal's inquiry. *Lubanes* v. *George, supra* at 325. *Salem Orthopedic Surgeons, Inc.* v. *Quinn,* 377 Mass. 514, 521 (1979).

3. *The offer of proof.* The plaintiff's offer of proof, which we accept as true, *McMahon* v. *Glixman,* 379 Mass. 60, 65-66 (1979), *Little* v. *Rosenthal, supra* at 578, consisted of her affidavit, an opinion letter from two oral surgeons, and various hospital reports. We summarize the offer of proof, relying principally on the surgeons' letter. In April, 1978, a subtotal excision of a cystic hygroma was performed on the plaintiff's neck at the defendant hospital. Over a course of several years the plaintiff had required several surgical procedures for this disorder. Although the disease had in the past been life threatening, the April, 1978, procedure was done purely for cosmetic reasons. The procedure resulted in severance of the hypoglossal nerve with resulting severe dysfunctions in speech, mastication, saliva management, and swallowing. The severance of the nerve, with the ensuing consequences, was foreseeable as a probability despite proper performance of the surgery. Standard and acceptable medical practice required that the plaintiff be informed before the operation of the risk of nerve severance and the consequences of severance. The plaintiff was not given that information. If she had been, she would have declined the operation.

According to the offer of proof, Dr. Mulliken was the admitting physician and surgeon in charge of the operation. Dr. Holmes and Dr. Gilman assisted at the operation. In

addition, before the operation Dr. Holmes discussed with the plaintiff the potential consequences, risks and side effects of the surgery, but he never informed her of the risk of loss of tongue function and its consequences. He told the plaintiff that he would perform the operation successfully.

It is apparent that the offer of proof was sufficient to raise a question appropriate for judicial inquiry with respect to the defendants Mulliken and Holmes. The only mention of Dr. Gilman in the offer of proof is found in the operative report, where he is listed as an assistant. The plaintiff asserts that Dr. Gilman's participation as an assistant is sufficient to create a doctor-patient relationship with a concomitant duty of disclosure. The plaintiff does not present any case law to support this proposition, and we have found no authority that would impose such a duty on a surgical assistant. It would not be reasonable to require all of the individuals who only assist in the operating room to obtain the informed consent of the patient.

The plaintiff claims that the hospital is vicariously liable for the alleged negligence of the surgeons. In her brief, the plaintiff argues that the doctors were servants of the hospital. The offer of proof does not show the surgeons' affiliation with the hospital. Even if we were to assume staff affiliation, there is nothing to show that the hospital had power of control over the surgeons' professional conduct. *Kapp* v. *Ballantine, supra* at 762. See generally *Khoury* v. *Edison Elec. Illuminating Co.,* 265 Mass. 236, 238 (1928).

The judgment as to the defendants Mulliken and Holmes is reversed. The judgment as to defendants Gilman and Children's Hospital Medical Center is affirmed.

*So ordered.*