Sanders, J.
This is a medical malpractice and wrongful death action. It stems from the death of Roger J. Darke following his participation in an experimental gene therapy program. The case is now before the Court on a Motion for Partial Summary Judgment brought by two of the five defendants, the Estate of Dr. Jeffrey Isner and Caritas St. Elizabeth’s Medical Center of Boston, Inc. (“St Elizabeth’s”). They contend that judgment should enter in their favor on that portion of Count III in Plaintiffs Amended Complaint which alleges that they can be held legally liable because they failed to disclose to Mr. Darke the financial interest that they had in the experimental program. For the following reasons, I conclude that the Motion must be Denied. [1]
BACKGROUND
The defendants agree that the Court may take as true those factual allegations in the Plaintiffs Amended Complaint which are relevant to the disposition of this Motion. The Amended Complaint states as follows.
Roger Darke suffered from chronic heart disease. In November 1993, he underwent triple-bypass heart surgery. In 1998, he once again began to experience chest pains, and in January 1999, it was determined that the vein grafts in his heart had occluded. Dr Lance Larsen (not named as a defendant) suggested that Mr. Darke consider an experimental gene therapy program conducted at St. Elizabeth’s by Dr. Isner. After consulting with Dr. Isner, Mr. Darke and his wife agreed to his participation, and he was admitted to St. Elizabeth’s on May 24, 1999 to undergo the treatment. The next morning, he underwent surgery in which the gene therapy was delivered. Less than 24 hours later, he died.
In connection with his participation in the program, Mr. Darke executed an “Informed Consent” form which disclosed the experimental nature of the procedure and listed the medical risks associated with it. The Motion before the Court does not concern the plaintiffs claim that the disclosure of medical information was inadequate. Rather, the Motion concerns the claim that both Dr. Isner and St. Elizabeth’s may be held legally liable because they failed to disclose to Mr. Darke the financial stake that they held in the gene therapy program. The allegations relevant to that claim (together with the reasonable inferences which can be drawn therefrom) include the following.
Sometime prior to Mr. Darke’s death, Dr. Isner, who was chief of cardiovascular research at St. Elizabeth’s, developed an experimental treatment for coronary artery disease which involved the injection of a particular gene directly into the heart. In connection therewith, he formed a corporation with other individuals named Vascular Genetics, Inc. (“VGI”) (also named as a defendant). Dr. Isner and St. Elizabeth’s each held a 20 percent ownership interest in VGI. Because of this ownership interest, Dr. Isner and St. Elizabeth’s had a financial incentive to encourage patients to participate in the program. If the gene therapy program was successful, then both Dr. Isner and St. Elizabeth’s stood to profit financially in proportion to their ownership stake. Neither Dr. Isner nor anyone else from St. Elizabeth’s disclosed these facts to the Darkes. If they had, then Mr. Darke would not have elected to participate. For purposes of this Motion, this Court assumes that the gene therapy was a substantial contributing factor to Mr. Darke’s death.
DISCUSSION
This Motion raises a question of first impression for this Court: Is the Massachusetts common-law definition of informed consent broad enough to permit the imposition of tort liability on a doctor who fails to disclose to his patient that he has a financial interest in the treatment that he recommends? I conclude that it is.
The seminal Massachusetts case on the doctrine of informed consent is Harnish v. Children’s Hospital Medical Center, 387 Mass. 152 (1982) (“Harnish’). In that case, the Supreme Judicial Court noted that the common law has long recognized the individual’s interest in being free from the nonconsensual invasion of his bodily integrity. In the medical context, that means that a patient may decline to undergo treatment even if, in the eyes of the medical professional, the treatment is in his best interest. Because of this *690 right of the patient to decide for himself, the doctor has an obligation to disclose certain information to the patient so that he may make an informed decision. 387 Mass, at 154. On the other hand, “there are limits to what society or an individual can reasonably expect of a physician” regarding what matters need to be disclosed. 387 Mass, at 155. Communication of scientific information to a patient with no medical training can be difficult, and there may be no limit to those risks of a proposed treatment which are only remotely possible. Accordingly, the SJC held that the physician’s duty to share information with his patient “depends upon what information he should reasonably recognize is material to the plaintiffs decision.” 387 Mass, at 156. If the physician fails to divulge sufficient information to enable the patient to make an informed judgment about whether to give or withhold consent to a medical procedure, then that constitutes medical malpractice.
The defendants argue that the rule announced in Harnishwas limited to the disclosure of medical information, not information regarding a doctor’s financial interest in the treatment itself. Certainly, the SJC in Harnish discussed the rule solely in medical terms. Thus, the SJC stated that a doctor must disclose “significant medical information,” which includes “the nature and probability of risks involved, the benefits to be reasonably expected, the inability of the physician to predict results . . . the likely result of no treatment, and the available alternatives, including their risks and benefits.” 387 Mass, at 155-56. This Court does not read Harnish to mean that only medical information need be disclosed, however. The touchstone to the inquiry is whether the information is material: If it is information which would be significant to a reasonable person in the patient’s position, then the physician has a duty to disclose it.
Although there is no appellate decision in Massachusetts squarely addressing the issue before this Court, courts in other states have held that a physician’s duty of disclosure extends to non-medical information. Thus, in Moore v. Regents of University of California, 51 Cal.3d 120, 793 P.2d 479, 271 Cal.Rptr. 146 (1990), the California Supreme Court reversed the trial court’s dismissal of a claim for medical malpractice which predicated liability on the doctor’s failure to tell his patient of his intent to use the patient’s cells in potentially lucrative medical research. Acknowledging that the validity of a patient’s consent typically arises from the failure to disclose medical risks, the Court noted that the real question is what is material to a patient’s decision. If a doctor’s judgment is influenced by a profit motive, then that is something that his patient should know. Similarly, in D.A.B. v. Brown, 570 N.W.2d 168, 170 (Minn.Ct.App. 1997), the Minnesota Court of Appeals (relying on state professional ethical standards) held that a doctor’s failure to disclose to a patient that he received payments from a drug company for prescribing a certain drug “presents a classic informed consent issue.” "It is well accepted that patients deserve medical opinions about treatment plans and referrals unsullied by conflicting motives.” Ibid. Finally, in Shea v. Esensten, 107 F.3d 625 (8th Cir. 1997), the court held that the plaintiff stated a claim where the allegation was that his health care provider failed to tell him about the financial incentives that it offered its employees to discourage them from making referrals. In order for the patient to make a fully informed decision about whether to trust his doctor’s recommendation that a cardiology referral was not necessary, he should have been told about the doctor’s financial stake.
Further support for this Court’s conclusion is found in various guidelines promulgated by professional medical organizations as well as by the federal government. For example, the Association of American Medical Colleges requires that all consent forms used in connection with research by its members should disclose to any participant the existence of any significant financial interest that the researcher has in the treatment itself. And the American Medical Association’s Council on Ethical and Judicial Affairs has stated that physicians working in the managed care setting should disclose to their patients financial incentives and restrictions placed on them by the HMO. See Ethical Issues in Managed. Care, 273 J.A.M.A. 330 (Jan. 25, 1995). In an April 2000 policy statement, the American Society of Gene Therapy counseled against any clinical investigator having “equity, stock options or comparable arrangements in companies” sponsoring the research. And the Code of Federal Regulations requires clinical investigators conducting experimental treatment to disclose to the patient any benefit that might be gained by third persons as a result of the treatment. 21 C.F.R. §50.20, §50.25. Although these regulations are neither directly on point in the instant case nor controlling on this question of state common law, they do indicate a trend towards requiring physicians to disclose non-medical information to the patient.
Finally, the plaintiff offers the expert opinion of Dr. Cary Gross. She states that, at least in those circumstances where the procedure is highly experimental, a reasonable physician in Dr. Isner’s position would have disclosed his (and St. Elizabeth’s) financial interest in VGI, and that his failure to do so fell below the standard of medical care required by someone practicing his specialty. This opinion (together with the other allegations in the Plaintiffs Amended Complaint) creates a triable issue as to whether the defendants can be held liable for the failure to tell Mr. Darke about the financial interest that they had in the program which was recommended to him. As one Court stated, the question is not whether the physician must as a matter of law disclose any given fact to his patient, but rather whether the jury should be informed about a failure to make that disclosure and make up its own mind as to whether the information was material or *691 not under the circumstances. Arato v. Avedon, 5 Cal.4th 1172, 1184, 858 P.2d 598, 23 Cal.Rptr. 2d 131 (1993). Thus, the defendants in the instant case would be entitled to prevail on their Motion for Summaiy Judgment only if this Court were willing to conclude that such information cannot as a matter of law be considered material.[2] This I am not willing to do.
CONCLUSION AND ORDER
For all the foregoing reasons, the Defendants’ Motion for Summaiy Judgment is hereby DENIED.

The defendants also moved for summaiy judgment on so much of the Amended Complaint as seeks recovery for loss of consortium. For the reasons set forth in the defendants’ Memorandum of Law, this Court in a margin note allowed that Motion.

Indeed, another way of viewing this Motion is as an attempt to foreclose the plaintiff from introducing evidence concerning Dr. Isner’s and St. Elizabeth’s financial interest in VGI. Because I conclude that this interest is relevant to the question of informed consent, it necessarily follows that this information should be admitted at trial (provided it meets other evidentiary requirements).