Sanders, Janet L., J.
This is an action brought by the Commissioner of Correction (the “Commissioner”) seeking a court order authorizing the use of force to administer medical treatment to the respondent, a prison inmate. On Januaiy 11, 2006, this Court declined to issue a temporary restraining order, holding that the respondent was entitled to counsel and a hearing before any determination could be made as to the Commissioner’s entitlement to the relief requested. That hearing was held today, with the respondent absent but represented by court-appointed counsel. Applying the analysis set forth in Commissioner of Correction v. Myers, 379 Mass. 255 (1979), this Court concludes that the state’s interest in compelling treatment does not outweigh the respondent’s right to refuse it, so that the Commissioner’s request for injunctive relief must be Denied.
BACKGROUND
The respondent, David Turner, is currently incarcerated at the Old Colony Correctional Center serving a life sentence. On December 24, 2005, he suffered a stroke. He was treated first at the Brockton Hospital Emergency Room, transported to the Shattuck Hospital (the “Shattuck”) and then transferred to the New England Medical Center (the “NEMC”) because of the severity of his medical condition. At the NEMC, Turner was apparently compliant with medical treatment and his condition improved enough so that, on Januaiy 6, 2006, he was returned to the Shattuck. Since that date, Turner has refused to cooperate with medical personnel and has refused any and all medical treatment.
The only evidence that the Commissioner presented at the hearing was the testimony of Dr. Arthur Brewer, the medical director for University of Massachusetts Correctional Health Services. Dr. Brewer’s knowledge about this case is limited to what he was able to glean from a review of the Shattuck’s medical records between Januaiy 6 and today’s date. He has not seen the medical records of the NEMC or, for that matter, medical records from any other institution concerning Turner’s condition before January 6, 2006. Although the Shattuck’s medical records state that Turner has a “history” of heart disease and high blood pressure, they do not identify the source of that information. Dr. Brewer based his opinion that Turner faces a second stroke on the fact that Turner suffered a stroke a few weeks ago and on this unspecific history of heart-related problems. Turner’s current condition is unknown because he has refused to cooperate in the taking of vital signs.
This Court also has the affidavit of Farshi Fararooy, the physician involved in the treatment of Turner at the Shattuck. In the two-page affidavit, Fararooy states that Turner needs medication to regulate high blood pressure. He also needs diagnostic blood tests as well as physical and occupational therapy to assist him in regaining his previous level of functioning. Turner is refusing medical treatment, apparently because he wants to be transferred back to the NEMC where he believes he will receive superior medical care. Because his condition has stabilized, such a transfer is not warranted, and all necessary medical treatment could be provided at the Shattuck.
DISCUSSION
This Court begins its analysis by recognizing that there is a general right belonging to every individual to refuse medical treatment, even where the treatment would clearly be in his best interests. That right stems from the “right of self determination and individual autonomy [which] has its roots deep in our history.” Brody v. New England Sinai Hospital, 398 Mass. 417, 430 (1986). Where the individual is a competent adult, this right is near absolute: Even where the person’s medical condition is life threatening, courts have al *438 most always upheld the right to decide one’s own fate. See e.g. Harnish v. Children’s Hospital Medical Center, 387 Mass. 152, 154 (1982); see also Lane v. Candura, 6 Mass.App.Ct. 377, 383 (1978). There are nevertheless certain state interests that must be considered. Superintendent of Belchertown State School v. Saikewicz, 373 Mass. 728, 740-41 (1977) (“Saikewicz”). Where the individual is a prison inmate, then the state’s interest in orderly prison administration may outweigh the interest of the individual to refuse treatment. Commissioner of Correction v. Myers, 379 Mass. at 261-62 (“Myers”).
In Saikewicz, the Supreme Judicial Court affirmed the trial court’s decision not to compel treatment of a mentally retarded resident of a state school. It did so only after weighing the right to refuse life-saving treatment against four countervailing State interests that were potentially implicated: (1) the preservation of life; (2) the protection of the interests of innocent third parties; (3) the prevention of suicide; and (4) the maintenance of the ethical integrity of the medical profession. 373 Mass. at 741. Focusing on the State’s interest in the preservation of life, “the most significant of the asserted State interests,” the SJC noted that it was of diminished importance there because the patient’s leukemia was incurable and would soon cause death regardless of any medical treatment rendered. In Myers, the SJC determined that an order authorizing medical treatment was warranted where the individual was a prison inmate. In that case, the medical treatment (dialysis) was essential to the survival of the inmate. Even more important, however, a failure to render treatment posed a significant threat to the governmental interest in maintaining security and discipline within the institution. The inmate was refusing medical treatment in an attempt to coerce prison officials into transferring him from a medium security institution to a minimum security prison.
Applying the above legal principles to the instant case, this Court concludes that, based on the information currently available to me, Turner’s right to refuse treatment outweighs the Commissioner’s interest in compelling it. I reach this conclusion for a number of reasons, including the following.
1.There is insufficient evidence before the Court to conclude that Turner faces an imminent risk of death or serious physical harm by refusing medical treatment. As noted above, Dr. Brewer reviewed only the medical records of the Shattuck; he based his opinion that Turner faces an imminent risk of a stroke primarily on the fact that Turner has suffered one stroke already. Because Dr. Brewer had no specific information about Turner’s past medical condition and Turner refuses tests necessary to assess his current condition, Dr. Brewer has no idea whether the first stroke was precipitated by high blood pressure or whether, in the absence of medication, Turner’s condition has deteriorated from where it stood a week ago. In short, because Dr. Brewer had so little information available to him, it is not clear whether the prognosis for Turner is markedly different, with or without medication, or whether any risk of stroke is truly an imminent one.
2. If this Court compels medical treatment and Turner continues to refuse to cooperate even in the face of a court order, physical force will be necessary, which could itself increase Turner’s risk of a stroke or heart attack if he resists. Moreover, although the treatment itself is not invasive, the steps that must be taken to compel treatment (including the use of four point restraints) is invasive. Finally, the use of force may detract from the validity of any diagnostic tests. For example, if Turner’s vital signs are taken when he is in a highly agitated state, that would not give medical personnel the information they need to assess what his medical condition is in the absence of any physical struggle.
3. Some of the treatment that the Commissioner states that Turner requires cannot be compelled, even with the use of force. For example, Turner must cooperate with medical personnel for physical therapy to be effective. And although Dr. Brewer opined that Turner needs medication to treat high blood pressure, he did not know whether that medication could be administered by injection and therefore could not explain how Turner could be forced into taking the medication orally. Certainly, this Court’s contempt powers would be meaningless, since Turner is already serving a life sentence.
4. Turner’s reason for refusing treatment is based on his belief that he would receive better treatment at the NEMC. He is not demanding to be transferred to a different penal institution, as in Myers — a demand which directly interferes with the government’s interest in the maintenance of institutional security and preservation of internal prison discipline. The Commissioner argues that, if Turner dies while at the Shattuck, then that will undermine inmates’ confidence in their access to proper medical treatment there. Of course, this assumes that no inmate would be aware of Turner’s refusal to accept treatment. Moreover, it does not directly implicate the type of governmental interest in prison administration that Myers discusses.
CONCLUSION AND ORDER
Taking into consideration all of the circumstances, this Court concludes that the state interests in preserving life and in maintaining an orderly prison environment are not strong enough to outweigh Turner’s individual right to make his own decisions about medical treatment. Accordingly, the Commissioner’s Motion for a Preliminary Injunction is DENIED. This is without prejudice to renewing this request if and when additional information becomes available regarding the imminence and severity of medical risks that Turner faces if he continues to refuse to cooperate with medical personnel at the Shattuck.