Lu, John T., J.
*291 Introduction
This is a medical malpractice action brought by Louis Erskine Ward (Ward) against Clarence Kylander, M.D. (Kylander), St. Vincent Hospital (Hospital), and Tenet Healthsystem (Tenet). The Hospital and Tenet move for summary judgment, arguing that they may not be held liable for the alleged malpractice of Kylander, on this record. Agreeing that there is insufficient evidence of an employer-employee relationship to establish a genuine issue of material fact, the Court grants summary judgment as to the Hospital and Tenet.
Background
The dispute centers on whether Kylander obtained informed consent from Ward before performing a stapedectomy, and in particular, whether Ward was warned that the procedure could cause facial nerve damage and impair his hearing. Ward asserts a failure to obtain informed consent, negligence, failure to supervise, vicarious liability, corporate negligence, and violations of the Patient’s Bill of Rights, G.L.c. 11, §70E. The Hospital and Tenet now move for summary judgment, arguing that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. They claim that there was no employer-employee relationship between Kylander and the Hospital, and therefore liability cannot be imputed to either. Ward has submitted an opposition to the motions for summary judgment. Arguments on these motions were heard on May 1, 2006.
The facts, either undisputed or taken in the light most favorable to the non-moving party, are as follows. On September 19, 2000, Ward met with Kylander to discuss the possibility of Ward undergoing a surgical procedure known as a stapedectomy on his left ear. During this conversation, Ward signed an informed consent form, which was witnessed by a nurse. Following surgery, Ward experienced a range of complications, including numbness and paralysis in his facial muscles, and loss of vision and hearing. Ward brought suit against Kylander, the Hospital, and Tenet, claiming that he had not been properly informed of the risks and dangers associated with the surgery, and that he would not have elected to undergo a stapedectomy had he been aware of the risks.
At the time of Ward’s surgery, Kylander was a private practitioner employed by Fallon Clinic, and maintained an office at 95 Lincoln Street in Worcester. Kylander considered himself to be an independent practitioner. He was a member of the medical staff at St. Vincent’s, but he did not receive a paycheck or employee benefits from either the Hospital or Tenet. He also did not have a contract with Tenet, and he has stated that he was not supervised by either Tenet or its subsidiary, the Hospital.
Tenet is a Nevada corporation with its principal place of business in Dallas, Texas. The Hospital is owned and operated by St. Vincent Hospital, LLC, which is managed by Saint Vincent Hospital, Inc. Saint Vincent Hospital, Inc. is a wholly owned subsidiary of Saint Vincent Healthcare System, which is a wholly owned subsidiary of OrNda Hospital Corporation. OrNda Hospital Corporation is a wholly owned subsidiary of Tenet HealthSystem Healthcorp. Tenet is the parent company of Tenet HealthSystem Healthcorp.
Kylander was not employed by Tenet at the time of Ward’s stapedectomy. Moreover, through one of its vice presidents, Tenet has stated that it did not supervise, direct, or employ Kylander or any of the registered nurses or non-medical staff at St. Vincent’s. The Defendants were apparently unable to depose the Plaintiff because he resides in Barbados. However, the Plaintiff did respond to interrogatories served by the Defendants.
Discussion
Standard of Review
Summary judgment is granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case, or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motor Corp., 410 Mass. 706, 716 (1991).
Analysis
1. Ward’s Vicarious Liability Claims against Tenet and St. Vincent’s
Ward’s arguments regarding Tenet and the Hospital’s liability hinge primarily on principles of agency law and vicarious liability. “Broadly speaking, respondeat superior is the proposition that an employer, or master, should be held vicariously liable for the torts of its employee, or servant, committed within the scope of employment.” Dias v. Brigham Medical 438 Mass. 317, 319-20 (2002). It naturally follows, then, that in order to be held liable on a theory of respondeat superior, the parties must have an established employer-employee relationship. See id. at 321-22. Such a relationship implies that the employer has the right to exercise direction and control over the actions of the employee that are performed within the scope of employment. See id. at 321-22. “If the relationship of master and servant exists and if what the employee is doing is in the furtherance of the master’s *292 business, i.e., in the scope of employment, the law gives the master the right of direction and control.” Hohenleitner v. Quorum Health Resources, 435 Mass. 424, 431 (2001).
A physician, by virtue of the highly skilled nature of the medical profession, generally acts as an independent practitioner and is not subject to the direction and control of anyone else. However, a physician may still be deemed a servant of a hospital in certain circumstances. Dias, 438 Mass. at 321-22; Hohenleitner, 435 Mass. at 432-33; see also Kelley v. Rossi, 395 Mass. 659, 662-63 (1985); Pearl v. West End Street Railway, 176 Mass. 177, 179 (1900).
In order to determine whether a physician is an employee of a hospital or medical group, Massachusetts courts consider a number of factors, including whether the hospital pays the physician’s salary, whether the parties believe that they have formed an employer-employee relationship, and whether the hospital has the right to direct and control the physician’s treatment decisions. Dias, 438 Mass. at 322; Chase v. Independent Practice Ass’n, 31 Mass.App.Ct. 661, 665 (1991). This determination is necessarily fact-dependent. Dias, 438 Mass. at 322. In cases such as this one, where there is no clear admission of employment, it is particularly useful to consider whether the hospital had the authority to direct and control the details of the alleged employee’s actions. Id. The control “needed to establish the relation of master and servant may be very attenuated [and] . . . there may even be an understanding that the employer shall not exercise control.” Hohenleitner, 435 Mass. at 431-32 (quoting Restatement (Second) of Agency §220(1) comment d (1958)).
Ward has failed to introduce sufficient evidence that would support a finding that Kylander was an employee of either Tenet or the Hospital. On this record, the only evidence is that Kylander was an independent contractor who was employed by an unrelated entity at the time of the alleged malpractice. In his affidavit, Kylander states that did not receive salary or benefits from the Hospital or Tenet, nor was he supervised in his practice of medicine by the Hospital or Tenet. Furthermore, in their respective affidavits, both Tenet and Kylander express the view that Kylander was not an employee of Tenet. The summary judgment record is devoid of any evidence that Tenet or the Hospital had the right to direct or control Kylander’s treatment of patients. The fact that the Hospital’s administrative policy manual sets forth standards for doctors to obtain informed consent from patients does nothing to bolster Ward’s argument that Kylander was the Hospital’s employee; moreover, it detracts from his argument that the Hospital and Tenet are liable under a corporate negligence theory.
The Hospital and Tenet cannot be held liable under a theory of apparent or ostensible agency. In the medical malpractice context, health maintenance organizations (HMO) may be held liable based on ostensible agency, if the HMO creates the appearance that a physician is its employee, regardless of the physician’s actual employment status. Chase, 31 Mass.App.Ct. at 667-68. Even if these principles were applicable to Ward’s case, he has not alleged that he believed that Kylander was the Hospital or Tenet’s employee at the time of his stapedectomy, nor has he alleged that he relied to his detriment on any such representations made by the Hospital or Tenet. Id. “In order to hold [the HMO] liable under an ostensible agency theory, there would have to be a showing of reliance on representations by [the HMO], that [the doctor] and [the medical center] were its agents or employees.” Id. at 668. Assuming arguendo that the situation here is analogous to that of an HMO that has contracted with physicians to provide medical services to its members, Ward has failed to make the requisite showing to prevail on an ostensible agency theory.
Ward has failed to come forward with sufficient evidence to demonstrate a disputed issue of fact as to Kylander’s employment status, and therefore liability cannot be imputed to Tenet or the Hospital for Kylander’s actions. Thus, he may not, as a matter of law, proceed against Tenet or the Hospital as to the negligence, vicarious liability, failure to supervise, or informed consent claims.
2. Corporate Liability-
Ward’s corporate liability claim is also predicated on Kylander having been an employee or agent of the Hospital or Tenet. Applying the principles of agency law discussed above, Massachusetts courts recognize corporate liability for the negligence of physician employees. Dias, 438 Mass, at 323. “[Although a corporate entity may not control the precise treatment decisions of physicians, the entity should not be able to escape liability for physician malpractice.” Id. (citing Bing v. Thunig, 2 N.Y.2d 656 (1957), for the proposition that hospitals may be held liable for the malpractice of their employee physicians). Because the summary judgment record reveals no evidence that Kylander was an employee of the Hospital or Tenet, Ward’s corporate liability claim cannot succeed.
Additionally, Tenet and the Hospital cannot be held liable for Kylander’s failure to obtain informed consent under a corporate negligence theory of liability even in the absence of an employer-employee relationship between Kylander and Tenet or the Hospital. Ward argues that Tenet and the Hospital should not prevail on these motions because they “assumed the role of . . . arranging and coordinating the total health care of [their] patients.” Thompson v. Nasan Hosp., 591 A.2d 703, 707 (1991).
Ward accurately suggests, that some jurisdictions, such as Pennsylvania, have adopted a theory of corporate negligence that imposes liability upon the corporate hospital for all persons who practice medicine within its walls. Id. However, Ward fails to bring to the *293 Court’s attention any authorities suggesting such a theory has been recognized in Massachusetts. Ward also fails to provide any evidence suggesting a material issue of fact as to how Tenet or the Hospital failed in their duty to oversee persons practicing medicine within the hospital, or their duty to adopt and enforce adequate rules and policies. If Ward is suggesting that such duiy was breached by Tenet and the Hospital in not obtaining informed consent, he is asking the court to ignore the general rule that it is the responsibility of the physician, and not the Hospital, to obtain informed consent, absent control over the physician by the hospital. See Benson v. Mass. General Hosp., 49 Mass.App.Ct. 530, 533-34 (2000).
3. Informed Consent and the Patient’s Bill of Rights
Ward also argues that the Hospital and Tenet failed in their obligation to obtain informed consent from him prior to the stapedectomy procedure. To the extent that this claim is based on the Hospital or Tenet’s failure to adequately supervise Kylander, it cannot proceed because, as discussed at some length above, Kylander was not an employee of either at the time of Ward’s surgery.
In order to prevail on an informed consent claim, Ward must demonstrate that the risks associated with the procedure were not properly disclosed, and if they had been, neither he nor any reasonable person would have elected to undergo the procedure. Benson v. Mass. Gen. Hosp., 49 Mass.App.Ct. 530, 533-34 (2000) (quoting Harnish v. Children’s Hosp. Med. Center, 387 Mass. 152, 158 (1982)). Ward does not satisfactorily explain how the Hospital or Tenet failed to disclose the risks associated with a stapedectomy, or offer any evidence to show that the procedures that St. Vincent’s had in place to obtain informed consent from patients were inadequate. The Hospital’s administrative policy manual states that the “physician performing the procedure has the ultimate responsibility for the informed consent process by providing sufficient medical information to enable the patient to decide whether or not to undergo the proposed treatment.” The policy manual further emphasizes that this is a duty that cannot be delegated to anyone besides the physician. The Hospital’s role is limited to developing a policy that verifies that the physician has obtained informed consent from a patient prior to performing a procedure.
The Hospital has an administrative policy in place to ensure that physicians obtain informed consent prior to performing surgeiy, and Kylander complied with this policy by having Ward sign an informed consent form prior to the stapedectomy. Ward does not contest that the signature on the informed consent form is his, and he also does not offer any evidence to demonstrate that the Hospital’s informed consent policy was inadequate. Therefore, the informed consent claim once again turns on whether the Hospital and Tenet properly supervised Kylander. As discussed above, because the record demonstrates that Kylander was not an employee of the Hospital or Tenet, the informed consent claim cannot succeed as a matter of law. Similarly, Ward’s claim involving the Patient’s Bill of Rights must fail because he has failed to come forward with any evidence to suggest that the Hospital or Tenet’s actions violated the provisions of the Patient’s Bill of Rights pertaining to informed consent.
ORDERS
For the foregoing reasons, the Hospital and Tenet’s motions for summary judgment are ALLOWED.