NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-750

FRANCIS HENNESSEY & another[1]

vs.

CAPE COD ORTHOPEDICS AND SPORTS MEDICINE, P.C. & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Francis Hennessey, brought a medical malpractice action against Timothy Kinkead, M.D., and Kinkead's medical practice, Cape Cod Orthopedics and Sports Medicine, P.C. (defendants), alleging that the defendants' negligence during surgery caused disabling nerve damage in the plaintiff's right leg.[3]  After the plaintiff disclosed on the eve of trial that he

---

[1] Marie Hennessey.

[2] Timothy Kinkead, M.D.

[3] Because this appeal turns entirely on whether summary judgment was correctly entered on Francis Hennessey's claim that the surgery was performed without his informed consent, we refer to him as "the plaintiff."  We recognize that the complaint also alleged a count of loss of consortium on behalf of the plaintiff's wife, Marie Hennessey.

intended to proceed solely on a theory of lack of informed consent and that he would not be calling an expert witness at trial, the judge granted summary judgment for the defendants. The plaintiff appeals, arguing that he was not required to present expert testimony because Kinkead actually did disclose the risk that materialized and, therefore, a jury could decide whether that disclosure was adequate without any expert assistance. We affirm.

Background. The materials in the record, viewed in the light most favorable to the plaintiff, establish the following facts. As a result of his work as a police patrol sergeant, the plaintiff suffered repeated trauma to his right knee. After two arthroscopic procedures failed to remedy the plaintiff's debilitating pain, Kinkead recommended total knee replacement surgery. Prior to the surgery, the plaintiff signed a surgical consent form acknowledging that Kinkead had disclosed "the usual risks" and the "special risks and consequences" associated with knee replacement surgery. The form did not specify individual risks, nor did it list nerve or neurovascular damage as potential risks. According to his brief, the plaintiff "repeatedly testified that Dr. Kinkead never disclosed to him that the total right knee arthroplasty surgery posed the risk of permanent nerve damage." Nonetheless, in his brief he states

2

that "it is undisputed that the risk of neurovascular injury <u>was</u> disclosed to the patient" (emphasis added).

Following the surgery, the plaintiff experienced chronic pain in his right leg and foot, pins and needles, and a condition called "foot drop" as the result of nerve damage sustained during surgery. The plaintiff "was deemed physically incapable of performing the essential duties of his job" and forced to retire from the police force.

In the parties' joint pretrial memorandum, in addition to asserting that the defendants were negligent during surgery and postoperative treatment, the plaintiff asserted that the defendants failed to obtain his informed consent because they did not inform him of the risk of nerve damage and foot drop. During a hearing on motions in limine held the day before trial was to begin, plaintiff's counsel disclosed that he was not planning to prove that Kinkead's negligence during surgery caused the plaintiff's nerve damage, but instead intended to try the case as "a lack of informed consent case." Accordingly, he no longer planned to call the plaintiff's previously disclosed expert to testify. Counsel argued that because Kinkead had in fact disclosed the risk of neurovascular injury, the only question for the jury was whether the information disclosed was adequate for the plaintiff to make an informed decision. The next day the defendants moved for judgment as a matter of law,

3

arguing that, without expert testimony regarding the applicable standard of care, the plaintiff could not prevail on his lack of informed consent claim.  Treating the defendants' motion as a motion for summary judgment, the judge allowed it, and judgment entered for the defendants.  The plaintiff timely appealed.

Discussion.  "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law."  Augat, Inc. v. Liberty Mutual Ins. Co., 410 Mass. 117, 120 (1991).  "We review a decision to grant summary judgment de novo."  Zaleskas v. Brigham & Women's Hosp., 97 Mass. App. Ct. 55, 60 (2020).

It is well settled that "a physician owes to his patient the duty to disclose in a reasonable manner all significant medical information that the physician possesses or reasonably should possess that is material to an intelligent decision by the patient whether to undergo a proposed procedure."  Harnish v. Children's Hosp. Med. Ctr., 387 Mass. 152, 155 (1982).  To establish the physician's duty to disclose, the plaintiff must prove (1) that a doctor-patient relationship existed, (2) that the doctor knew or reasonably should have known the medical information subject to disclosure, (3) that the doctor reasonably should have recognized that the information was

4

material to the patient's decision, and (4) that the doctor failed to disclose the material information.  See Halley v. Birbiglia, 390 Mass. 540, 548 (1983).  As there is no dispute here that a doctor-patient relationship existed, and the plaintiff's argument on appeal posits that Kinkead disclosed the risk of "neurovascular injury," we focus our discussion on the second and third elements.

Establishing the information that the physician possesses, or should possess, relevant to the risks and benefits of a particular medical procedure is central to a claim of lack of informed consent.  See Precourt v. Frederick, 395 Mass. 689, 694 (1985); Harnish, 387 Mass. at 155-156.  "Only upon such a showing would there be any basis for finding a duty of discussion with and disclosure to the patient."  Haggerty v. McCarthy, 344 Mass. 136, 141 (1962).  See Precourt, supra (physician had duty to disclose particular risk "only if he had, or reasonably should have had, information about that risk").  "The information a physician reasonably should possess is that information possessed by the average qualified physician or, in the case of a specialty, by the average qualified physician practicing that specialty."  Harnish, supra at 155.  This knowledge or information "involves professional expertise and can ordinarily be proved only through the testimony of experts."  Id. at 156.  It was therefore "incumbent on the plaintiff to

5

show by expert medical testimony" that undergoing total knee replacement surgery, given the condition of the plaintiff's knee after substantial prior medical intervention, "created a definable and substantial medical risk" that was known or should have been known by Kinkead.  Haggerty, supra at 141.  Indeed, the plaintiff's allegation in the joint pretrial memorandum that in providing informed consent, the defendants "fell below the standard of care of a medical professional," implicitly recognized the need for expert testimony.  The plaintiff's decision to proceed without expert testimony was fatal to his case.

Even if we were to accept the plaintiff's proposition that Kinkead himself demonstrated knowledge of the relevant medical information because he disclosed it to the plaintiff -- in effect, providing expert testimony against himself -- the plaintiff still could not have proven what information was material to his decision without an expert.  In determining materiality, appropriate information for the physician to disclose to a patient includes "the nature and probability of risks involved, the benefits to be reasonably expected, the inability of the physician to predict results, . . . the likely result of no treatment, and the available alternatives, including their risks and benefits."  Harnish, 387 Mass. at 156.  A jury may assess the materiality of the disclosure without the

aid of an expert, see id., but only after having heard what the medical community regarded as relevant information concerning the severity and likelihood of the risks.  See Precourt, 395 Mass. at 695-696.  These are not matters within jurors' "general human knowledge and experience" (citation omitted).  Pitts v. Wingate at Brighton, Inc., 82 Mass. App. Ct. 285, 289 (2012).

The California appellate court's decision in Daum v. Spinecare Med. Group, Inc., 52 Cal. App. 4th 1285 (1997), does not alter our conclusion.  In Daum, the court held that the trial judge erred by giving a California model jury instruction that restricted the jury to considering only expert testimony "in deciding whether [the plaintiff] was given all the information relevant to his decision" to allow a surgeon to implant an experimental spinal fixation device.  Id. at 1304. The instruction was erroneous because California statute and regulation required patients to be informed that the device was still under investigation, and the instruction prevented the jury from considering the prescribed warning.  See id. at 1293, 1304.

The plaintiff likens his case to Daum because there, as in his case, the patient signed a consent form shortly before surgery.  The Daum court held it "was also improper to limit the jury to expert testimony in deciding whether the timing and manner of the disclosure to [the plaintiff] was sufficient to

allow him to give his fully informed consent." Id. at 1304. To the extent that this holding is consistent with Massachusetts law, it does not assist the plaintiff here. In Daum, the form that the patient signed was seven pages long, "clearly stated the device was investigational," and "outlined specific risks and noted alternatives to the use of the . . . device," as required by California law. Id. at 1298. Whether the content of the form was adequate was not at issue. Here, however, as plaintiff's counsel argued at the hearing on the defendants' motion for judgment, "the adequacy of the disclosure" was central to the plaintiff's informed consent claim. The case thus required the jury to assess the content of Kinkead's disclosures[4] and, not merely, as the plaintiff now argues in his brief, whether the plaintiff "would have understood the risk presented by disclosure of the medical te[r]m 'neurovascular injury' in a pre-printed form."

The plaintiff's reliance on Zaleskas is also misplaced. One issue in Zaleskas was whether a terminally ill cancer patient withdrew her consent to an X-ray examination procedure after it had begun. See Zaleskas, 97 Mass. App. Ct. at 57, 59. On that narrow issue, we held that "consent to have one's body

_____

[4] At his deposition, Kinkead testified that he discussed the surgery's "risks, benefits, potential complications and alternatives" with the plaintiff at length during a March office visit prior to the April surgery.

8

touched or positioned for an X-ray is not a matter beyond the common knowledge or experience of a lay person and does not require medical testimony." Id. at 64. The case before us, however, is not about whether the plaintiff gave or withdrew consent to the surgery. Also at issue in Zaleskas, as here, was whether the defendant medical professionals obtained the plaintiff's informed consent or were otherwise negligent in providing care. See id. at 69-70. For the plaintiff to prove those claims, we held that expert testimony was necessary: "Without expert testimony, the plaintiffs' negligence-based claims, which include lack of informed consent battery, negligence, gross negligence, and conscious pain and suffering, fail." Id. at 70.

Because the record materials demonstrated that, without expert testimony, the plaintiff had "no reasonable expectation of proving an essential element of [his] case," Boazova v.

9

Safety Ins. Co., 462 Mass. 346, 350 (2012), the defendants were entitled to summary judgment.[5]

Judgment affirmed.

By the Court (Massing, Neyman & Wood, JJ.[6]),

Paul Little

Clerk

Entered: April 10, 2025.

---

[5] Given our disposition of the appeal, we need not address the plaintiff's arguments regarding the admissibility of independent medical examinations to prove his damages.

[6] The panelists are listed in order of seniority.